### SMITH, respondent, *v.* WILLIAMS, appellant.

RULES OF STATUTORY CONSTRUCTION.  Courts apply the rules and principles of interpretation to the statutes, which are ambiguous, doubtful and uncertain.

SAME — *plain statutes need no interpreter.*  Statutes which are expressed in plain and definite language require no judicial construction, and must be enforced according to the intention of the law-making power.

ACT TO PREVENT THE TRESPASSING OF ANIMALS UPON PRIVATE PROPERTY EXPOUNDED.  S. brings this action against W. to recover damages for the destruction of his growing grain by the cattle of W., which broke and entered his farm.  The statute (Cod. Sts. 373, § 1) provides that if any cattle " shall break into any ground inclosed by a lawful fence," the owner of the animal " shall be liable to the owner of such inclosed premises for all damages sustained by such trespass."  *Held,* that there must be a substantial compliance with the statute ; that an immaterial variation in the height of the fence from that of a lawful fence would not defeat the action, and that a lawful fence, or an obstruction of the same character, must surround entirely the ground or premises, as a condition precedent to the right to bring an action for damages.

EVIDENCE MUST BE CERTIFIED.  This court will not examine the evidence in the transcript, if it is not certified to be correct by the judge who tried the cause, or agreed upon by the parties.

*Appeal from First District, Jefferson County.*

THE cause was tried before SERVIS, J.

S. ORR and SHOBER & LOWRY, for appellant.

The court erred in saying, in effect, to the jury that it was unnecessary for respondents' premises to be inclosed to enable respondents to recover.  This instruction disregarded the law of the Territory.  Cod. Sts. 373, § 1.  This requires the premises to be " inclosed by a lawful fence," which means entirely sur-

rounded by the fence, or a similar obstruction. Webster's definition of "inclosed." The statute defines a lawful fence. Cod. Sts. 476, ch. 25.

Stock owners are not liable for any injury to the crops of a party, if the premises are not entirely surrounded by a lawful fence, as defined by the statute. Cattle in this Territory are free commoners, and can roam and graze at large upon the public range. Stock owners are not required to guard their stock from ranging upon any premises, except those which are lawfully inclosed. Any other construction is contrary to the plain provisions of the statutes and the intention of the legislature.

No case can be found to conflict with these views, and the following authorities support them. *Waters* v. *Moss,* 12 Cal. 536; *Comerford* v. *Dupuy,* 17 id. 308; *Seeley* v. *Peters,* 5 Gilm. 130; *Headen* v. *Rust,* 39 Ill. 186; *Darling* v. *Rodgers,* 7 Kan. 592; *Larkin* v. *Taylor,* 5 id. 434; *Union P. R. Co.* v. *Hand,* 7 id. 380; *Rose* v. *Bunn,* 21 N. Y. 275; *Bradley* v. *Buffalo,* 34 id. 427.

Respondents must be free from fault. They cannot support this action partly on their wrong and partly on wrong of appellant. *Munger* v. *Tonawanda R. R. Co.,* 4 N. Y. 349. The evidence shows that there was no obstruction to prevent cattle from roaming on respondents' premises a great portion of the distance around it.

A. G. P. GEORGE and G. F. COWAN, for respondents.

Cattle within the Territory are not free commoners. The common law has not been changed by the legislature. The right cannot be founded upon custom, as sufficient time has not elapsed to establish a custom.

A party seeking to justify a trespass of his cattle upon the close of another, by reason of a defective fence, which the owner was bound to keep in repair, must show that the cattle entered through or over the defective fence. *Deyo* v. *Stewart,* 4 Denio, 101; *Melody* v. *Reab,* 4 Mass. 471; *Colden* v. *Eldred,* 15 Johns 220.

The cattle were not free commoners, and were not rightfully upon the common adjoining respondents' close. Respondents

were not obliged to fence against them.  *Wells* v. *Howell,* 19
Johns. 385 ; *Stafford* v. *Ingersol,* 3 Hill, 38.

There is no evidence before this court to show what part of
respondents' premises was inclosed.

WADE, C. J.  This was an action in the nature of trespass,
brought by plaintiffs against defendant, to recover damages, for
that defendant's cattle broke and entered the farm or inclosure
of plaintiff, and destroyed his crop of growing grain.

The statute under which the action was brought is as follows:

Section 1.  "If any horse, mule, jack, jennie, hog, sheep or any
kind of neat cattle, shall break into any ground inclosed by a
lawful fence, the owner or manager of such animal shall be liable
to the owner of such inclosed premises for all damages sustained
by such trespass."

A lawful fence, as defined by the statute, is one four and one-
half feet in heighth, whether constructed of poles, rails or boards.
Cod. Sts. 373, 476. ·

Upon the trial, the court gave to the jury the following instruc-
tions, the giving of which, among others, is assigned as error :

" If you shall find from the proof that either the slough spoken
of by the witnesses is used for a fence or inclosure, or any other
part of the inclosure is insufficient under the law as I have given
you, and shall further find that defendant's cattle did not enter
the premises through such insufficient or defective inclosure, but
that they did enter the same where the inclosure of the premises
was good and lawful as I have defined, then you will find for the
plaintiffs, and assess their damages, as you find from the proof
they are entitled, not exceeding the amount claimed in the com-
plaint.   That if the slough or swamp was not of such a character
as to prevent cattle crossing it like that of a lawful fence, yet if
the cattle in question did not enter the close of plaintiffs over or
through the same, the fact that it was not sufficient to turn cattle
and stock will be no defense to the plaintiffs' right to recover, pro-
vided you shall find that the cattle entered the premises where the
fence was good and lawful that inclosed the same, no matter by
whom such fence was owned that inclosed the same.   And if the
fence of Hall, or any other person adjoining plaintiffs, as a part

of plaintiffs' inclosure, was ever so defective, such 'defect will be no defense to this action, provided you shall find the defendant's cattle entered plaintiffs' premises where the fence was lawful, as already defined."

This instruction had the effect to add to the statute already quoted, the following words : " *But if such ground is not inclosed by a lawful fence, nevertheless the plaintiffs can recover, provided said animals enter the premises at a point where the fence is lawful.*"

The instruction was evidently given upon the hypothesis that the statute in question could be so construed as to declare that if the animal enters the grounds at a point where the fence is lawful, it shall be presumed therefrom that there was an inclosure, and that the fence surrounding it was of the heighth and kind required for the entire distance, and that the fence at such point shall conclusively determine the character of the fence around the entire inclosure; and more than this, it shall conclusively determine that the ground was entirely inclosed; and a defense showing that there was no inclosure, or that the fence was unlawful and insufficient, would thereby be excluded.

Can the foregoing words be added to the enactment by judicial legislation or construction, by virtue of the rules that control the interpretation of statutes?

Statutes should be their own interpreter. Courts must look at the language used, and the whole of it, and derive therefrom the intention of the legislature. Where this intention is obvious there is no room for construction. When the language is plain, simple, direct and without ambiguity, the act construes itself, and courts must presume the legislature intended what it plainly says. It is only in the case of ambiguous, doubtful and uncertain enactments that the rules and principles of interpretation can be brought into requisition. It is not allowable to interpret what has no need of interpretation.

This seems to be the settled doctrine of the law, both in England and the United States, as a reference to a few decisions will demonstrate.

In the case of *King* v. *Inhab. Stoke Damarel,* 7 Barn. & Cress. 563, the court, per BAGLEY, J., says: "I do not know how to

get rid of the words of this section of the act of parliament; and where the legislature, in a very modern act of parliament, have used words of a plain and definite import, it is very dangerous to put upon them a construction, the effect of which will be to hold that the legislature did not mean that which they have expressed."

Says Coleridge, J., in *King* v. *Poor Law Comrs.*, 6 Ad. & E. 7: " The court should decline to mold the language of an act for the sake of an alleged convenience, or an alleged equity, upon doubtful evidence of intention."

Patteson, J., in *King* v. *Burrell*, 12 Ad. & E. 468, says: "Every day I see the necessity of not importing into statutes words which are not to be found there. Such a mode of interpretation only gives occasion to endless difficulties."

In *Lamond* v. *Eiffe*, 3 Q. B. 910, the court, per Lord Denman, say: " We are required to add some arbitrary words to the section, which would exclude us from acting in certain cases. We cannot introduce any such qualifications, and I cannot help thinking that the introduction of qualifying words in the interpretation of statutes is frequently a great reproach to the law."

And in *Everett* v. *Mills*, 4 Scott (N. C.), 531, Tindal, C. J., says: " It is the duty of all courts to confine themselves to the words of the legislature, nothing adding thereto, nothing diminishing."

The courts of this country have spoken with equal clearness upon this subject. The court of appeals in New York say in *Newell* v. *People*, 7 N. Y. 97: " Whether we are considering an agreement between parties, a statute, or a constitution, with a view to its interpretation, the thing we are to seek is *the thought which it expresses.* To ascertain this, the first resort in all cases is to the natural signification of the words employed, in the order and grammatical arrangement in which the framers of the instrument have placed them. If, thus regarded, the words embody a definite meaning which involves no absurdity and no contradiction between the different parts of the same writing, then that meaning, apparent on the face of the instrument, is the one which alone we are at liberty to say was intended to be conveyed. In such a case there is no room for construction. That which the

words declare, is the meaning of the instrument, and neither courts·nor legislatures have the right to add to or take away from that meaning."

So in *Bidwell* v. *Whitaker*, 1 Mich. 469, it is said: "It is only where a statute is ambiguous in its terms that courts exercise the power of so controlling its language as to give effect to what they may suppose to have been the intention of the law-maker. In the statute before us the language admits of but one construction. No doubt can arise as to its meaning. It must therefore be its own interpreter."

In *Bosley* v. *Mattingly*, 14 B. Monr. 89, the court use this language: "It may be proper, in giving a construction to a statute, to look to the effects and consequences when its provisions are ambiguous, or the legislative intention is doubtful. But when the law is clear and explicit, and its provisions are susceptible of but one interpretation, its consequences, if evil, can only be avoided by a change of the law itself, to be effected by legislative and not judicial action."

And in *United States* v. *Fisher*, 2 Cranch, 358, the supreme court of the United States say: "Where a law is plain and unambiguous, whether it be expressed in general or limited terms, the legislature should be intended to mean what they have plainly expressed, and, consequently, no room is left for construction."

Applying these principles to the statute before us, is there any reason for attempting an interpretation thereof? Does not the language of the act convey to the mind one, and but one, definite, clear, distinct thought? If a statute can be so framed as to absolutely forbid an interpretation, by reason of its plain, definite and certain meaning, is not this one of that kind?

The act simply provides that "If any horse  *  *  *  or any kind of neat cattle shall break into any ground *inclosed by a lawful fence*, the owner or manager of such animal shall be liable to the owner of such *inclosed* premises for all damages sustained by such trespass."

Is there any doubt as to the meaning of this enactment? Is there any ambiguity in the words used in the construction of the sentences? Is there any difficulty in arriving at the intention of the legislature, and do we not know at a glance the thought

intended to be expressed? Does the language involve any absurdity or contradiction, and can there be but one interpretation to the words used? Is it possible to mistake the meaning of the words, "any ground inclosed by a lawful fence," as long as the word "inclosed" contains no mystery, and "a lawful fence" is exactly defined by the statute?

We answer all these inquiries, and say there is no doubt, no ambiguity, no absurdity or contradiction, and no difficulty whatever in discovering the meaning of the statute from the words employed in its formation, and hence it must be its own interpreter, and the court is relieved from any duty or responsibility in the matter.

The statute requires that the ground be inclosed with a lawful fence before the right of action accrues, and where it speaks of an inclosure, can we say it means an uninclosed field? When it says a lawful fence, can we say it means no fence at all? From the fact that cattle break and enter the field where the fence is lawful, can we conclusively say from this fact alone that the field was inclosed, and that a lawful fence entirely surrounded it? We think not, and we also think a lawful fence entirely surrounding the ground entered, or some obstruction equivalent thereto, is a condition precedent to the right to bring the action, and hence the instruction to the jury authorizing a recovery in the absence of an inclosure, and, in the absence of a lawful fence, was error. This view of the statute is further sustained by the fact that the second section of the act specially provides a remedy in the case of trespassing animals where the premises trespassed upon *are not inclosed.*

With the *policy* of the statute we have nothing to do; as to the motive of the legislature in enacting it, it is not our province to speak. Whether it is wise or foolish, whether it meets the demands and requirements of the country is a matter for the legislature, and not the courts. It is our duty to execute the will of the law-making power, where they have plainly expressed it, and where their intention is doubtful and obscure, to discover it by the well-known rules of interpretation. If the law is a bad one, nevertheless it should be enforced until the rightful authority repeals it.

It was urged with much force, upon the part of the respondent, that if the inclosure must be entirely surrounded by a lawful fence before a recovery could be had, the statute would defeat itself, for the reason that if the fence varied a hair's breadth from $4\frac{1}{2}$ feet in height at any place, which would very likely occur from the action of frost or other causes, then no recovery could be had, and thus the statute would be inoperative. To this it was replied, by the other side, that unless a lawful fence was required for the entire inclosure, then damages might be recovered in the absence of any fence whatever except on one side of the field; to all of which we say that a reasonable and substantial compliance with the statute is all that can be required, and an immaterial variation in the height of the fence from that of a lawful fence, would not defeat the action.

Holding, as we do, that the statute must be substantially complied with as to the inclosure, and the fence, before a right of action accrues, it is not necessary to determine whether or not the animals named in the statute are free commoners, as they are called, and thereby entitled to roam at large upon the public lands within the Territory.

We have not looked into the statement of the evidence by the appellant or the amendments thereto by the respondent, as the same appears in the transcript, for the reason that such evidence has never been certified to, by the judge who tried the case, as correct; neither is there any agreement by the parties to the same effect, as the statute requires.

Judgment of the court below is reversed, and cause remanded for a new trial.

*Judgment reversed.*