SCHREINER, RESPONDENT, *v.* DEEP CREEK STOCK ASSN. ET AL., APPELLANTS.

(No. 5,170.)

(Submitted May 4, 1923. Decided June 30, 1923.)

[217 Pac. 663.]

*Trespass—Livestock—Depasturing Unfenced Lands—Evidence —Insufficiency.*

Livestock — Public Range — "In Herd" — "In Charge of Herders" — Definition.
1. Livestock running at large on the public domain are "under herd" or "in charge of herders" when a considerable number of them are gathered and held together by herders or "line riders" in control of their movements from place to place or within certain areas on the public range.

Same—Trespass on Unfenced Land—When Owner Liable.
2. A lawful fence entirely surrounding his lands is a condition precedent to the right of a land owner to recover damages from owners of livestock trespassing thereon, unless the latter with knowledge of the private ownership of unfenced land willfully herds them thereon or drives them to a point so near the boundaries that they are certain to go upon and feed thereon.

Same—Public Range—Trespass on Unfenced Land—Evidence—Insufficiency.
3. *Held*, that where plaintiff, the owner of uninclosed lands within a forest reserve in which defendants had a permit to graze their cattle, in his action for damages for depasturing his land relied upon the allegation in the answer that defendants were running their cattle "under herd" and "in charge of herders" as an admission that the animals were placed upon his premises by

Liability of owner for trespass of cattle, see notes in 22 L. R. A. 55· 6 A. L. R. 228; 18 A. L. R. 69.

[68 Mont. 104.]

defendants' agents and did not introduce evidence that they were willfully or negligently driven or permitted to remain thereon, it appearing on the contrary that the herders endeavored to keep them off of his premises and drove them therefrom when found there, a judgment in his favor was unwarranted under the above rules.

*Appeal from District Court, Broadwater County; Wm. L. Ford, Judge.*

ACTION by Carl Schreiner against the Deep Creek Stock Association and Peter F. Riley, its president. From the judgment for plaintiff, defendants appeal. Reversed and remanded for new trial.

*Mr. Wm. Scallon* and *Mr. Wm. T. Pigott,* for Appellant, submitted a brief and argued the cause orally.

*Mr. John A. Matthews,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

The complaint in this action purports to set forth three causes of action. The first is for wages due and unpaid, and the second and third for damages alleged to certain hay, pasturage and personal property belonging to the plaintiff, upon premises by him rented, by reason of alleged trespass by the defendants and their cattle. The second and third causes of action stated amount merely to but one cause of action alleged differently in separate counts. The first of these counts recites that defendants through their agents and servants, during the absence of the plaintiff from the premises, entered upon and into plaintiff's buildings used and destroyed personal property therein contained, and herded defendants' cattle on the premises in large numbers, thus consuming plaintiff's hay and pasturage. The second count, being designated plaintiff's third cause of action, is the one primarily involved on this appeal. Thereby it is alleged by plaintiff that the defendant, Deep Creek Stock Association, was an association of more than two persons *"engaged in the business* of raising cattle and running

and herding their joint cattle, * * * *under herd* and in charge of herders, upon certain designated areas of the National Forest in Broadwater county; that during the season of 1921 * * * from the early part of May until the latter part of October * * * the defendants employed one Con Mahoney and one * * * Lee as herders and placed them in charge of the cattle of'' the association, ''said herders being * * * the agents of the said defendants and in full charge and control of the cattle''; that during all that time the plaintiff had under lease and was in the possession and control of certain lands known as the Dean place, in Broadwater county, within the National Forest, in which forest the defendants had permits to herd their cattle; that the plaintiff during the times mentioned had upon the premises, by him so held under lease, valuable pasturage and roughage, together with personal property in the house and outbuildings, also twelve tons of hay in stack; that in the latter part of September and the fore part of October, 1921, during plaintiff's absence from the premises, ''the said herders, willfully, negligently and wrongfully, and the said defendants, by and through their said agents and employees, willfully, negligently and wrongfully, permitted the said cattle to escape from herd, and to break into and enter upon the said premises and there remain for a long period of time, and knowing the said cattle to be therein, willfully, negligently and wrongfully permitted the said cattle to be and remain therein and to break through and into * * * the corral around the said hay and to eat and destroy twelve tons of hay of the reasonable value of $150, and in some manner unknown to the plaintiff,'' enter the house and blacksmith-shop, ''eat and destroy all the salt therein and * * * destroy all the personal property therein, and to camp therein for a long period of time rendering the building unfit for the uses it was intended * * * until cleaned and repaired by plaintiff, to the damage of the plaintiff in the sum of $75, and to eat and destroy all of the pasturage and roughage on said premises to the damage of the plaintiff in the sum of $100.''

There is no allegation in the complaint that the plaintiff's premises were inclosed by a legal fence, and it was conceded by plaintiff's counsel at the trial that they were not so inclosed.

The first cause of action, based on plaintiff's claim for wages due, was admitted, the amount thereof, $109.35 having been tendered to the plaintiff, and subsequently deposited with the clerk of the court subject to plaintiff's order. The reply admitted the deposit. There was no issue on this demand.

Defendant's answer to the third cause of action admits that the defendant Deep Creek Stock Association was an association composed of two or more persons "engaged in the business of raising cattle," running and herding cattle in certain designated areas of the National Forest in Broadwater county, and in effect denied all other allegations. Upon issue joined the cause was tried to a jury. At the conclusion of the testimony in support of plaintiff's claim of damages, the defendants moved for a nonsuit as to the second and third causes of action because of failure of proof, and the court granted the motion as to the second cause of action, with the consent of counsel for the plaintiff. The cause was then submitted to the jury upon plaintiff's first and third causes of action, and the jury returned separate verdicts in plaintiff's favor—one for the amount admitted to be due for wages, and the other for damages assessed at $325. Judgment was regularly made and entered on the verdicts for the sum of $434.35, with interest and costs. A motion for a new trial having been denied, after the plaintiff had remitted $46 from the amount of the judgment in pursuance of a conditional order of the court, the cause is now before us on an appeal from the judgment.

No objection is raised or argued with respect to the verdict of the jury as to the amount due plaintiff for wages, or to allowing judgment to stand for that amount. Therefore there is, in fact, nothing before this court on appeal, other than the propriety of the verdict for damages on plaintiff's third cause of action, and judgment for the amount thereof.

Many errors are assigned, raising but a single question determinative of this appeal, *viz.:* What is the effect of the stat-ute relating to lawful fences as applied to the facts of this case?

It appears that the plaintiff after putting up his hay in 1921, left the premises unoccupied by anyone, and returned thereto on October 4 and 19, on both of which occasions he found defendants' cattle, numbering as many as forty head, upon his premises; that the hay and pasturage were completely destroyed, and other damage was done to his property as alleged. There is no evidence whatever tending to prove that the defendants willfully, negligently or wrongfully permitted the cattle to "escape from herd," or to break into the plaintiff's premises, or, knowing the cattle to be therein, willfully, knowingly or wrongfully permitted them to remain thereon or to do the damage alleged. And it appears without contradiction that the herders in charge of the cattle endeavored to keep them off the plaintiff's lands, and drove them therefrom on several occasions. They also endeavored to protect the plaintiff's hay in stack from damage by cattle by repairing the hay corral fence. The record does not disclose any duty imposed upon the herders to remain in constant attendance upon the cattle, but rather that their employment and duties incident thereto were, so far as reasonably possible, to keep the cattle upon their range obtained through forest reserve permit, and that they attempted to do no more.

However, it is argued by the able counsel for the plaintiff, and was so insisted at the trial, that the admission in defendants' answer of the allegations of plaintiff's third cause of action, to the effect that the defendants were "engaged in the business of raising cattle and running" and herding them "under herd and in charge of herders," relieved the plaintiff of the necessity of proving that the cattle were placed on plaintiff's premises by the defendants or their agents. There is no merit in this contention, for the admission is merely to the effect that the defendants did engage in such business, not

that the cattle were in fact herded on plaintiff's land or that they were actually at all times held- and restrained in herd. The defendants' cattle were lawfully running at large within the forest reservation, and those employed by them as herders were required and attempted only to keep the cattle within that portion of the forest reservation covered by the defendants' permit; otherwise the cattle were without restraint. From the record it would appear that they would be more correctly designated "line riders."

This state has long been a public range state wherein live-
[1] stock of private ownership have been and now are permitted by license of the government to graze without hindrance or restriction on the open, unoccupied, public domain. Such stock are said "to be running on the range." This latter term has a well-understood meaning to the people of Montana, as have likewise the words "under herd" and "in charge of herders." These words as used and commonly understood here convey the idea that a considerable number of domestic animals are gathered together and held together by herders in constant attendance upon them and in control of their movements from place to place on the public range or within certain areas. Animals may be "under herd" or "in charge of herders" one day and run at large the next. In either event the language is readily understood by the owners of livestock and others quite generally in this state. As thus defined, the meaning is in accordance with Webster's definition of the verb "herd"; i. e., "to tend, lead, or drive as a herdsman." (Webster's New International Dictionary; p. 1007.)

The evidence discloses that the so-called "herders" drove the cattle within the forest reserve upon the lands covered by the defendants' permit for summer pasturage, and therefrom in the fall of the year, and that they drove them from the plaintiff's premises, and other places where found without bounds, back to and within the range thus provided by the owners. The cattle were to all intents and purposes running on the public range, the difference being that the government

had asserted its proprietary rights, and required payment for such use of its lands.

A legal fence is defined by statute (sec. 3374, Rev. Codes 1921), and as to the liability of the owner of livestock for tres-**[2, 3]** pass it is provided: "If any cattle, horse, mule, ass, hog, sheep, or other domestic animal break into any enclosure, the fence being legal, as hereinbefore provided, the owner of such animal is liable for all damages to the owner or occupant of the inclosure which may be sustained thereby. This section must not be construed so as to require a legal fence in order to maintain an action for injury done by animals running at large contrary to law." (Sec. 3378, Rev. Codes 1921.)

And it has been held that a lawful fence as defined by the statute, entirely surrounding the grounds or premises entered, or some obstruction equivalent thereto, is a condition precedent to the right of recovery of damages against the owner of animals trespassing. (*Smith* v. *Williams,* 2 Mont. 195.)

The law applicable in this case was well and correctly stated by one of the defendants' learned counsel, Mr. Pigott, when a justice of this court. Speaking for the court he said in the case of *Beinhorn* v. *Griswold,* 27 Mont. 79, 94 Am. St. Rep. 818, 59 L. R. A. 771, 69 Pac. 557: "Either written law or custom may withhold from the owner who does not fence his land a remedy for loss suffered by reason of casual trespasses by cattle which stray upon it, and may give a remedy for such trespasses to those only who inclose their land. By custom as well as by statute the common law of England has been so modified in Montana. This is undoubtedly a legitimate exercise of the police power. * * * If the land owner fails to 'fence out' cattle lawfully at large, he may not successfully complain of loss caused by such livestock straying upon his uninclosed land. For under these circumstances the trespass is condoned or excused; the law refuses to award damages. While the land owner, by omitting to fence, disables himself from invoking the remedy which is given to those who inclose their property with a legal fence, and while the cattle owner is thereby

relieved from liability for casual trespasses, it is nevertheless true that the cattle owner has no right to pasture his cattle on the land of another, and that cattle thus wandering over such lands are not rightfully there. They are there merely by the forbearance, sufferance or tolerance of the nonfencing land-owner; there they may remain only by his tolerance. The cattle-owning plaintiff did not owe to the land-owning defendant the duty to fence his cattle in; the latter did not owe to the former the duty to fence them out; neither of them was under obligation to the other in that regard. * * * There cannot be negligence without breach of duty. Hence, manifestly, the defendant was not guilty of negligence in omitting to prevent the plaintiff's cattle from going upon his unfenced land." However, where the owner of livestock herds them on another's land, with knowledge of the private ownership thereof, or drives them to a point so near the boundaries of privately owned premises that they are certain to go upon and feed thereon, the absence of a legal fence in determining the liability of the owner of such livestock for damages becomes immaterial. (*Monroe* v. *Cannon,* 24 Mont. 316, 81 Am. St. Rep. 439, 61 Pac. 863; *Herrin* v. *Sieben,* 46 Mont. 226, 127 Pac. 323; *Chilcott* v. *Rea,* 52 Mont. 134, 155 Pac. 1114; *Dorman* v. *Erie,* 63 Mont. 579, 208 Pac. 908.)

Undoubtedly the owner of animals has no lawful right to deliberately drive or herd his stock on the premises of another, or to turn them into the inclosure of another. However, under the "legal fence law" privately owned premises must be fenced as required by statute in order to enable the owner to maintain an action for damages for trespass by the livestock of another unless (1) the trespassing animal is prohibited by statute from running at large, or (2) the trespassing animal has been placed or caused to be placed thereon by the owner of the animal with knowledge that the land is not open public domain.

To warrant the recovery of damages in a case such as this, the trespass must be of such a character that it may be said to

be willful. This may arise by driving or herding livestock on another's land with knowledge of private ownership of the land, without the consent of the land owner; but in this state an action for damages may not be predicated upon the trespass of stock lawfully running at large following their own inclinations in the absence of a legal fence inclosing the premises trespassed upon. It devolves upon the land owner to fence livestock out of his premises, to protect himself from their trespass where such stock are lawfully at large on the public domain.

In this case there is no claim made and no evidence that the cattle were driven on to the plaintiff's premises, or herded or left so near thereto that there was likelihood of their going to and upon the lands owned by the plaintiff. It will be noted that the second cause of action in plaintiff's complaint charged the defendants with knowingly herding their cattle upon plaintiff's lands, but there being no evidence to support such allegation a nonsuit as to this cause of action was properly granted by the court.

The rule applicable to the facts in this case is correctly stated by counsel for the defendants in the admirable brief filed in support of their contention on this appeal. It is so well expressed that we take the liberty of adopting counsel's language as our own: ''The defendants were under no duty to herd, or keep in herd, or under herd, their cattle or any of them. In Montana and in other states, where, as here, the land owners must, by lawful inclosure, 'fence out' the livestock of others, it is too plain for argument that the cattle owner may at his own pleasure either keep his cattle on his own land or turn them out with freedom to range and roam wheresoever they may desire. He is liable for such trespass only as they commit on property within a lawful fence, unless he drive them thereon, or (what is the legal equivalent) so treats them as to impel them to trespass. An example of the latter trespass is found in *Monroe* v. *Cannon, supra.*'' The same may be said of the *Dorman-Erie Case.*

As was well said by Horsky, District Judge, a jurist of marked ability, speaking for this court in the case of *Jeffers* v. *Montana Power Co., post,* p. 114, 217 Pac. 652: "It is fundamental that without a wrong there is no cause of action, and as stated by this court in the case of *Riddell* v. *P. W. H. & V. Co.,* 27 Mont. 44, 69 Pac. 241: 'A wrong is the breach of a legal duty.' It was therefore necessary for the plaintiff, in order to maintain his action against the defendants, to show a legal duty owing to him from them, and a breach of that duty. The mere fact that the plaintiff may have suffered damage is not of itself sufficient; there must be the violation of a duty recognized by law."

The judgment will stand affirmed as to the first cause of action to the amount of $109.35, admittedly due unto the plaintiff for wages. As to the third cause of action, since plaintiff proceeded at the trial upon the theory that the defendants' answer admitted that the cattle were at all times under herd and in charge of herders, the judgment thereon is reversed and the cause remanded to the district court of Broadwater county for a new trial. Costs of this appeal are assessed against the plaintiff.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and STARK concur.