EDGAR HOPKINS, Plaintiff and Respondent, v. RAVALLI
COUNTY ELECTRIC COOPERATIVE, INC., a Montana
Corporation, Defendant and Appellant.

No. 10627
Submitted May 13, 1964. Decided September 8, 1964.
395 P.2d 106

Thane & Robb, Jeremy Thane (argued), Missoula, for appellant.

Donald A. Paddock, Vernon Hoven (argued), Missoula, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment entered on a jury verdict. The judgment was in the amount of $4,560 and costs. The action was one for damages, both actual and exemplary, for the death of dairy cows and losses occasioned by poisoning, resulting from the use of a poisonous chemical sprayed upon grass and weeds by defendant, appellant here.

Appellant maintains an electric substation on a fifty-foot square tract of land which is bounded on three sides by land owned by respondent. The fourth side of appellant's land abuts a county road. Respondent operate a dairy farm and grazes his herd on a pasture into which appellant's property extends fifty feet on each side in the fashion of a peninsula. Appellant has erected a woven wire fence enclosing a forty-foot square of its property and leaving a strip of land five feet in width between each side of its fence and the adjacent property.

In 1959, 1960 and 1961, appellant applied a chemical soil sterilant to its substation property. The latter application was made over a two-week period in June of 1961 with a hand sprinkling can. The chemical was sprinkled along the fence to kill any grass which might otherwise grow up through the fence. All of the chemical was applied to land owned by appellant, and did not extend more than one foot outside the fence.

There was testimony that appellant knew and had had knowledge for many years that the woven wire fence did not

enclose all of its property but left a five-foot strip open to respondent's cattle. It was further shown that respondent did not know of the unfenced strip. Appellant did not warn or otherwise notify respondent of the use of the poisonous chemical, even though the importance of notification of neighboring personnel and its danger to animals was clearly contained on the label and there was testimony by the person who sold the chemical that he personally had warned appellant of the extreme caution necessary.

In June of 1961, some of respondent's cows became sick and some died, others suffered a loss in their production of milk. Veterinarians were summoned and post mortems were performed on some cows. Samples were taken from one cow and from the grass and soil around appellant's substation for testing by a laboratory. The grass and soil samples were reported positive for arsenic content while the samples from the one cow were reported negative for arsenic content.

The veterinarian diagnosis after autopsy of the deceased cows was death by heavy metal poisoning, either lead, arsenic or mercury. The laboratory results revealed positive arsenic trioxide content of the grass and soil sprayed. The testimony clearly showed that the cows had eaten the grass but, as remarked before, the laboratory tests of the content of the stomach of one of the cows that had died were negative as to any metal poisons, seemingly conflicting with the autopsy conclusion of the veterinarian. It was shown that no test was made on the second cow.

Much was made of the negative result of the laboratory test for metallic poison. However, it was brought out that the test was made of the "contents" of the stomach and not of the tissues themselves. Also, tests were not conducted on the organs which might have been helpful. In spite of the laboratory results, which were in effect found inconclusive by the veterinarians involved, as to the cause of death, the veterinarians testified that in their opinions, the poisoning resulted from the

chemical sprayed. There was, then, sufficient evidence from which the jury could, as it did, find the responsible and proximate cause of the damage to plaintiff to result from the chemical sterilant.

A motion for a new trial in one sentence upon a so-called ground of "error in law occurring at the trial and excepted to by the defendant" was made and denied.

Nineteen specifications of error are set forth by appellant and grouped for argument. We shall likewise group the questions for discussion.

Specifications of error 1 through 3 and 11 through 17, all have to do with the basic question of law involved. To state it we shall quote from appellant's conclusion in its brief:

"This case hinges upon the duty owed by the landowner to the owner of cattle permitted to graze upon the landowner's unfenced land."

The theory of the trial court which established the scope of the duty incumbent upon the respective parties was expressed at a pre-trial conference in these words:

"Now it makes no difference to the Court here (referring to a previous statement that the lands were originally in one enclosure, owned by one grantor) as to who owns the land. The defendant, in the Court's view, can be relieved of liability here only if he can show that the plaintiff knew facts or ownership of the land and the use of the chemical by the defendant, and what the chemical was. * * * If the plaintiff knows that this land was the defendant's land, and if the plaintiff knows that the defendant was going to use this chemical on the land, then to the Court it will make a great difference in the applicable law. As a matter of fact, I don't think the plaintiff could recover in that case."

The scope of the duty of the parties was again set forth in Instruction No. 3, which reads as follows:

"In this action the plaintiff has the burden to prove by a preponderance of the evidence that the defendant corporation

knew, or should have known, as an ordinary prudent person, that the plaintiff was grazing cattle upon the land outside the REA fence but within the fenced pasture used by the plaintiff and from which the REA tract had been taken, and that the defendant knew, or should have known as an ordinary prudent person, that the chemicals used to sterilize soil outside the REA fenced plot were dangerous to cattle. If the plaintiff sustains his burden in these matters, and if you find that the plaintiff's cattle ate some of the chemicals, and that this was the proximate cause of the loss or damage, if any, suffered by the plaintiff, then you shall find for the plaintiff and assess such damage as you find the plaintiff has sustained.

"If plaintiff fails in his burden of proof in either respect your verdict must be in favor of the defendant."

As opposed to the theory set forth in Instruction No. 3, defendant, appellant here, asserts that the cattle of respondent were trespassing on appellant's land, and thus, that the landowner owes no duty other than to refrain from actual harm or wilful and wanton injury. Defendant cites as authority the cases of Beinhorn v. Griswold, 27 Mont. 79, 69 P. 557; Thompson v. Matusek, 134 Mont. 500, 333 P.2d 1022; Egan v. Montana Central Railway, 24 Mont. 569, 63 P. 831. Jonosky v. Northern Pacific Ry Co., 57 Mont. 63, 187 P. 1014. Of these cases the court finds none applicable in the instant case. However, since the Beinhorn case is the strongest authority for appellant's position, i.e., that appellant owed no duty to the cattle in this instance, this court finds it necessary to discuss the Beinhorn case and to distinguish it from the instant case on the facts. In the Beinhorn case trespassing cattle belonging to plaintiff wandered onto defendant's mine and mill site and there drank from vats containing poisonous chemicals consisting principally of cyanide of potassium. In appearance the solution resembled water. The poison, in vats, used in the Beinhorn case was an integral part of the mining operations of defendant. In the instant case the use of the poison in destroying vegetation

was not directly integrated with the use of the premises by appellant. Also, in Beinhorn, the cattle were roaming at will on the public domain or on the open range; in the instant case, the cattle were fenced in. There are other facts peculiar to the instant case which lead this Court to the conclusion that the Beinhorn case does not apply here; that appellant knew the cattle were enclosed in a pasture adjoining appellant's property; that appellant knew respondent had for many years pastured his dairy herd on the land adjacent to the fence erected by appellant; that under these conditions, appellant sprayed a poisonous substance one foot outside appellant's fence where appellant knew or should have known that respondent's dairy herd could very easily come to graze, and still appellant gave no notice to respondent of the poison; further, that appellant gave no notice to respondent although appellant possessed the knowledge from the label found on the barrel of the spray solution of the importance of the notification of adjoining landowners and also possessed the knowledge that the poison should be kept away from animals; and that finally, there is the fact that respondent had no knowledge of the poison spray.

These facts above point out two important things to this court:

(1) That appellant had *knowledge* of the nature of the poisonous substance and its danger to animals;

(2) That with this knowledge, appellant failed to give *notice* to respondent, an adjoining landowner. Thus, we conclude in this particular case, under these particular facts, that appellant's ownership of the land upon which the poison was sprayed is immaterial, that there was an implied invitation to respondent, from the continuous usage for years by respondent of the strip of land as pasture, and that, therefore, appellant owed a duty to respondent to warn of the poisonous spray, especially where appellant had knowledge of the nature of the spray and the dangers it presented. We hold that the jury and judge in

the lower court were justified under the facts of this particular case in finding a breach of the duty to warn, and thus finding appellant guilty of negligence. (See R.C.M.1947, § 58-607, which says, "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. The extent of liability in such cases is defined by the title on compensatory relief.") (See also discussion of Beinhorn case in Molohon v. U. S. (D.C.Mont.) 206 F.Supp. 388.)

In specifications of error numbers 4 and 5, appellant asserts error in that respondent was allowed to state what a veterinarian, Dr. Ward, told him was the cause of death of one of the cows, and also, that respondent was allowed to testify relative to the results of laboratory tests. We shall not dwell at length on these alleged errors because, in any event, even granting technical error, it was not prejudicial because the testimony was brought out properly later without objection.

In specification of error number 6, appellant asserts that the best evidence rule of R.C.M.1947, section 93-401-12, was violated in that respondent was allowed to testify concerning the laboratory test results as alleged in specifications of error numbered 4 and 5. Again, granting for our purposes, that it was technical error to allow such testimony, it was clear that the district judge, albeit a dangerous practice, allowed the testimony on the assurance that it would be correctly proven later. Later, in the trial, without objection the same material was properly brought before the district court; in fact, some of it was presented by appellant.

As to specifications of error numbers 7, 8 and 9, appellant contends that there was a lack of a foundation sufficient for two veterinarians to testify as to the attractiveness of the weed-killing chemical to cattle. We fail to see wherein

a foundation of being a professional veterinarian is not sufficient for such a witness to give his opinion on taste of cattle.

Appellant also objects that one veterinarian, Dr. Ward, was allowed to explain the laboratory test results showing negative as to arsenic. Dr. Ward's explanation was to the effect that as to one particular cow, time and lack of information as to what was being sought which would cause the tests to be incomplete, might explain the negative results, and as to the second cow, no test was ever made of the organs of the cow. We fail to see how appellant was prejudiced by Dr. Ward's testimony. We find no merit in these specifications.

The balance of the specifications of error go to matters already discussed and we will not further consider them.

Finding no prejudicial error, we affirm the judgment.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN C. HARRISON and ADAIR concur.