GEORGE MONTGOMERY (sometimes known as GEORGE M. LETZ), Plaintiff and Respondent, v. CLIFFORD GEHRING and HOPE GEHRING, husband and wife, et al., Defendants and Appellants.

No. 10842.

Submitted February 11, 1965. Decided March 24, 1965.

As amended on denial of rehearing April 5, 1965.

400 P.2d 403.

Leo J. Kottas (argued), Helena, for appellants.

Gene A. Picotte, Conrad Fredricks (argued), Helena, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal by defendants from a judgment entered in the district court of Lewis and Clark County.

The case involves a boundary line dispute arising some years after a sale of land by George Montgomery Letz and his wife, Dinah Shore Letz, to one George Gehring and others (referred to collectively as "Gehring" herein). The evidence discloses that on or about April 20, 1948, defendants-appellants, Gehring, and plaintiff-respondent, Montgomery, entered into a contract for the sale of certain property along the Stemple Pass Road near Lincoln, Montana, and thereafter a warranty deed was executed and recorded in Lewis and Clark County, Montana, and it described a large amount of land conveyed, including:

The West Half of the Southwest Quarter (W½SW¼) and

the Southeast Quarter of the Southwest Quarter (SE¼SW¼) of Section Five (5), and Lots Two (2), Three (3), Four (4), Five (5), Six (6), Seven (7), Eight (8) and the Northeast Quarter of the Southeast Quarter (NE¼SE¼) of Section Six (6), in Township Thirteen (13) North, Range Eight (8) West, Montana Principal Meridian, containing 318.66 acres, more or less, according to the United States Government Survey thereof, together with all water and water rights, ditch, ditches and ditch rights, used in connection with said land, and appurtenant thereto; EXCEPT, however, that there is expressly reserved and excepted therefrom all the land in the corner which is under fence southwest of Poorman, of which the other side of Poorman would be the boundary, to the present Helena-Lincoln Road known as Stempel [sic] Pass, and all the land southwest and across the present road known as Stempel [sic] Pass of Section Six (6), Township Thirteen (13) North, Range Eight (8) West, consisting in all of approximately 60 acres, more or less, leaving a balance of approximately 258.66 acres, more or less.

The property in issue here is that described by the phrase:

"EXCEPT, however, that there is expressly reserved and excepted therefrom all the land in the corner which is under fence southwest of Poorman, of which the other side of Poorman would be the boundary, to the present Helena-Lincoln Road known as Stempel [sic] Pass, and all the land southwest and across the present road * * *."

The word "Poorman" refers to Poorman Creek, a non-navigable stream running from the southeast to the northwest cutting diagonally across the southwest quarter of Section 6. Driving on the Stemple Pass Road from southeast to northwest one would be to the northeast of the creek and parallel to it until about halfway across the diagonal, at which point the road crosses the creek and proceeds roughly parallel to it but on the southwest of it and on into Section 1 of the adjoining township.

A sketch of this shows two thin strips of land formed by the crossing of the road and creek. According to the deed, Montgomery owns both strips and all the land in Section 6 southwest of this road-creek zone. For part of the way, the boundary between Montgomery and Gehring is the center of the road. From the junction of the creek and road to the west side of Section 6 the boundary is the creek. This part of the boundary is in issue. Gehring contends that the boundary is along either the southwest edge or along the center of the creek and thence down the center of the road. Montgomery contends that the boundary is along the northeast edge of the creek and thence down the center of the road. The trial court held for Montgomery, and then because there are bluffs along the northeast edge of the creek Montgomery was granted an additional ten foot strip in order to build a fence. In other words, the trial court permitted Montgomery to move ten feet in on the Gehring property.

We are called upon to review the trial court's construction of the deed. In addition, we must analyze the fencing privileges because this is of importance to the parties.

In our opinion, the trial court is correct in construing the deed as reserving to Montgomery the land bounded by the northeast edge of Poorman Creek to where the creek crosses the Stemple Pass Road. There is no contest that the boundary continues along the center of the road to the south edge of Section 6.

Section 67-712, R.C.M.1947, provides:

"Except where the grant under which the land is held indicates a different intent, the owner of the land, when it borders upon a navigable lake or stream, takes to the edge of the lake or stream at low-water mark; when it borders upon any other water, the owner takes to the middle of the lake or stream."

The deed reserves and excepts to Montgomery the land southwest of Poorman, "of which the other side of Poorman would be the boundary." The reasonable construction of this

language is that it indicates a different intent than that the middle of the stream be the boundary. The language imparts to us that the northeast edge of the creek is intended to be the boundary. In an analogous case involving section 67-713, R.C.M.1947, (roads as boundaries), this court held that a deed describing the boundary as "following the south side of said county road" did not rebut the statutory presumption that the owner owned to the center of the abandoned county road. McPherson v. Monegan, 120 Mont. 454, 187 P.2d 542. There the court felt that the language did not rebut the presumptions as they exist in sections 67-712 and 67-713, R.C.M.1947, chiefly because there were no physical facts present to show a reason why the road ought not be divided.

"In the present case there is nothing in the deed * * * other than the language whose effect we have considered, to indicate an intent on the part of said grantors to retain the fee to one-half or any other part of the county road bordering on tracts A and B. Indeed, no reason whatever appears why Mrs. Samson should wish to retain the title to this narrow strip of land after it had ceased to be of any value to her. She had sold all the land on both the easterly and westerly sides of the road and the road itself was valueless to her. However, said strip of land was distinctly of value to the McPhersons' land as it was the only means of access thereto by land. We hold that neither the language of the deed in question *nor the physical facts* of the case are sufficient to overcome the presumption * * *." 120 Mont. 454, at pages 459-460, 187 P.2d 542, at page 544. (Emphasis supplied.)

We rely on the language of that case here. It is clear from the record that Montgomery had a reason to want the boundary along the northeast side of the creek. He reserved his plot of ground and the creek as a "honeymoon cottage" area and so used it. His obvious reason for wanting to have all of the creek was to keep the cattle from straying into it and milling around the cottage grounds. Such factors were not present in

the McPherson case. Here Montgomery could have been more careful in his drafting of that portion of the deed wherein the reservation was made, but we cannot say that the language is unreasonably construed when construed as we have here.

It is apparent from the McPherson case that where the language indicates that the edge, not the center, be the boundary, and where the circumstances show some probative explanation for this, then the statutory presumption that the boundary is along the center may be deemed rebutted.

■ The second problem is the correlative issue of fencing the creek area to prevent the cattle from getting into the creek and tracking onto the cottage grounds. The Gehrings are under no duty to fence or keep the cattle contained on their property under Montana law. If Montgomery desires that the cattle be kept off his property then it is his responsibility to build a fence. One releasing his livestock onto lands where he has a right to do so is under no duty to restrain them from entering another's unenclosed land. Such livestock owner is not responsible for damages occasioned by the entry of his livestock on such unfenced land through following their natural instincts. The exception to this, of course, is wilful or intentional herding or driving of livestock onto another's unfenced land or placing them so near that trespass is bound to occur. Such is not the law in all jurisdictions, but it has been the law for a long time in Montana. Dunbar v. Emigh, 117 Mont. 287, 158 P.2d 311; Thompson v. Tobacco Root Co-op, etc., Dist., 121 Mont. 445, 193 P.2d 811; Thompson v. Mattuschek, 134 Mont. 500, 333 P. 2d 1022; Hopkins v. Ravalli County Electric Cooperative, Inc., 144 Mont. 161, 395 P.2d 106.

Montgomery may fence out cattle by building a fence entirely on his own property in which case it is his private property. This, of course would not be satisfactory to him because the fence would have to be located either in the stream or on the Montgomery side of the creek. This would defeat the entire purpose Montgomery had in reserving everything to the south-

284

west of the northeast edge of the creek because the cattle would not be effectively restrained from coming on his land.

However, Montgomery may also build the fence on the boundary line along the northeast edge of Poorman. This rule prevails even though the fence will straddle one-half on his land and one-half on the Gehring property. Montgomery will be obliged to pay for the fence in its entirety. Should the Gehring ranch ever want to use the fence (as the fourth side of a fencing project of their own) then the fence will be deemed a "partition" fence and Gehring will be obligated to pay Montgomery for a "just proportion of the value." Sections 67-802, 67-803, R.C.M.1947.

There was some question in our minds whether those two statutes authorize Montgomery to build a fence on the line without agreement to do so from Gehring. The statutes are silent on this precise point. However, case authority of long standing holds that one party may build a "division" or "line" fence on the boundary line without agreement with the adjoining owner. In Hoar v. Hennessy, 29 Mont. 253, 74 P. 452, this court answered this question:

"* * * [W]e are confronted with the question whether, under our statute [now Section 67-802, R.C.M.1947], a division fence may stand upon the land of adjoining owners, in the absence of an agreement between them. * * * if the co-terminous owners are mutually bound equally to maintain the fences between them, and the burden should be equally upon each, it necessarily follows that the fence should rest equally upon the land of each. If it were otherwise, A. might build a division fence entirely upon his own ground, but directly at the line. B., his adjoining owner, occupying lands then unfenced, might afterward conclude to fence his land. He could thereupon inclose the three sides theretofore unfenced, build directly to his line, and up to the fence of A. He thus would have the benefit of A.'s fence, without paying anything therefor, while the statute provides that he must pay his just proportionate value of the

division fence; * * *." 29 Mont. 253, at pages 259-260, 74 P. 452, at page 454.

The court fully explored the situation where one party wants to build a fence on the boundary, but the other party is not ready to build. In such case the court concluded that the party wishing to build may build on the line and the other party will be obligated to pay his share at the time he decided to inclose his land. No agreement is necessary; the parties are merely following the provisions of the statutes cited above. These statutes have remained substantially unchanged since the Hoar decision in 1903.

██ We gather from the record that there are places along the northeast edge of the creek where there are steep bluffs, but that there are also places where the cattle can get down to the water. The trial judge ordered that Montgomery could fence at the distance of ten feet from the edge. There is no justification for this action. Respondent cites no authority in support of this order but merely states that since the deed is properly construed to give Montgomery to the northeast edge of the creek and because this edge has steep bluffs along it then Montgomery is permitted "sufficient land" to give effect to that construction. We have searched and find no authority that permits of such action. We will not sustain this attempt at private condemnation. The rule of law that the trial court was hinting at is that a partition fence may depart from the boundary line only where it is impossible to follow the line or so expensive as to be practically impossible. 36A C.J.S. Fences § 15, n. 6, 8; and cases cited therein. But that differs vastly from allowing Montgomery to fence off an arbitrary ten feet of the Gehring land. Under the correct rule, if, in building a fence along the line, a stream, bluff, or other obstacle is encountered, the fence may either be discontinued at such natural barrier or moved to the very edge of and around it in a manner both reasonable and just to the interests of both parties. Hence, Montgomery must fence along the

creek at those places where possible and then either run the fence up and over the very edge of the steep bluffs and back down to the creek's edge or just not try to make a continuous fence.

This decision is reasonable and just in light of the conditions existing along this stretch of Poorman Creek. Montgomery will have effectively restrained the cattle, enclosed his own land, and the interests of both parties under the deed have been protected.

■ Appellant's next specification of error involves the trial court's refusal to permit appellants to amend their answer by adding an affirmative defense of compromise settlement. It was represented that there was some sort of compromise settlement reached temporarily after the filing of the complaint and answer. Respondent effectively disposes of this specification by pointing out that the motion to amend came on the day of trial. No notice had been given respondent of this motion, and it definitely changes the complexion of the lawsuit. It is provided in M.R.Civ.P., Rule 15(d), that the court may permit a party to serve a supplemental pleading upon motion, upon reasonable notice, and upon such terms as are just. There was virtually no notice given of this motion, and to grant it would have been unjust to the respondent. We see no merit in this specification of error.

Appellant also contends that the reservation specifically pertains only to the land and not the water rights. However, since nothing is shown by the record to indicate that any water rights will be affected we see no reason to discuss the matter herein.

Subject to the modifications noted herein the judgment is affirmed.

Appellants are awarded their costs on this appeal.

MR. JUSTICES JOHN CONWAY HARRISON, DOYLE, ADAIR and CASTLES concur.