RONALD D. BARTSCH, Administrator of the Estate of Deanna L. Bartsch, Deceased, Plaintiff and Respondent, v. THE IRVINE COMPANY, a West Virginia Corporation, HECKMAN & SHELL, a Co-Partnership, and YELLOWSTONE PARK CO., a Delaware Corporation, Defendants and Appellants.

No. 11252.
Submitted April 11, 1967. Decided May 5, 1967.
Rehearing denied May 25, 1967.
427 P.2d 302.

Berg, Angel & O'Connell, Lyman H. Bennett, Jr. (argued), Bozeman, for appellant.

Landoe, Gary & Brown, H. B. Landoe (argued), Gene I. Brown (argued), Bozeman, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal by defendant from a judgment entered in favor of plaintiff.

The plaintiff-respondent is Ronald D. Bartsch, administrator of the estate of Deanna L. Bartsch, deceased, and will be referred to as plaintiff or by name. The defendant-appellant is Heckman & Shell, a co-partnership, and will be referred to as defendant.

The facts of this case are these: On October 5, 1965, Mr. Bartsch was returning to his home in Bozeman, Montana, from a business trip to Whitehall, Montana. Mr. Bartsch's wife Deanna and his two year old son Steven were in the car with him. He was proceeding toward Bozeman on Highway 289 east from Norris, Montana. It was getting dark, and headlights were in use. Mr. Bartsch dimmed his lights as another vehicle approached from the other direction, and just as he passed the other vehicle, he got a split second glimpse of a horse in the roadway. The vehicle and the horse collided. The horse crushed in the top of the car.

Mrs. Bartsch was killed in the collision.

The horse was not owned by defendant, but was being pastured by them on land which they leased. The horse had wandered off defendant's leased pasture lands and along the highway right of way for some distance.

The testimony at the trial showed that the area in which the accident happened was not a herd district or a grazing district, but was simply open range country. The testimony further established that the highway on which the accident occurred was a Montana Secondary Highway. There was no evidence in-

troduced at the trial to establish that the highway came within the definitions set forth in section 32-1018, R.C.M.1947. This section and sections 32-1019 and 32-1020, R.C.M.1947, have no application to the facts of this case.

Plaintiff based his action on section 58-607, which provides in part: "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned by another by his want of ordinary care or skill in the management of his property or person * * *." Plaintiff contends that allowing a horse to pasture in an area where it wandered onto the highway right of way and remained for some period of time resulting in a collision with plaintiff's car is lack of ordinary care or skill in the management of property and thus negligent.

At the close of all the testimony defendant moved for a directed verdict in its favor upon the grounds and for the reasons that there was a failure of proof on the plaintiff's part of any negligence on the part of defendant or of any willful act on the part of defendant in placing or permitting the horse to remain on the highway right of way where the accident occurred. The district court denied this motion.

The issue presented by this appeal is whether it was negligent for defendant to pasture horses in an area of open range country in which such horses might wander onto the highway right of way during the course of their grazing.

Montana has been open range country even before Montana became a state. The law of the Territory provided that recovery for damages done by trespassing livestock could only be accomplished if the trespassed property was enclosed by a lawful fence, which the laws also defined. In Smith v. Williams, 2 Mont. 195, 201, the Supreme Court of the Montana Territory dealt with an action brought for damages due to the trespass of cattle on plaintiff's land. The cattle ate plaintiff's crop of growing grain. Looking to the law which required a lawful fence before the action could be sustained, the Court made the following comment: "(W)e also think a lawful fence entirely

surrounding the ground entered, or some obstruction equivalent thereto, is a condition precedent to the right to bring the action * * *."

When Montana became a state, the policy of the open range continued, and the legislature enacted various statutes which dealt with trespass by livestock and the necessity of lawful fences to support any action for trespasses.

In Beinhorn v. Griswold, 27 Mont. 79, 90, 69 P. 557, 558, 59 L.R.A. 771, the doctrine of the open range was further discussed and explained in another trespass action. In this action the plaintiff was the owner of the cattle, and the defendant was the owner of the land upon which the cattle had wandered and had drunk a poisonous liquid: "The cattle-owning plaintiff did not owe to the land-owning defendant the duty to fence his cattle in. The latter did not owe to the former the duty to fence them out. Neither of them was under obligation to the other in that regard. The defendant is not liable in this action unless he was negligent. There cannot be negligence without breach of duty. Hence, manifestly, the defendant was not guilty of negligence in omitting to prevent the plaintiff's cattle from going upon his unfenced land.

"As has just been said, the straying of the plaintiff's cattle upon the defendant's land did not involve the violation of any legal duty upon the part of the defendant * * *."

In another trespass action, Schreiner v. Deep Creek Stock Ass'n, 68 Mont. 104, 109, 112, 217 P. 663, 665, this court further explained the doctrine of the open range: "This state has long been a public range state wherein livestock of private ownership have been and now are permitted by license of the government to graze without hinderance or restriction on the open, unoccupied, public domain. Such stock are said 'to be running on the range.'

* * * * *

" 'The defendants were under no duty to herd, or keep in herd, or under herd, their cattle or any of them. In Montana

and in other states, where, as here, the land owners must, by lawful inclosure, "fence out" the livestock of others, it is too plain for argument that the cattle owner may at his own pleasure either keep his cattle on his own land or turn them out with freedom to range and roam wheresoever they may desire * * *.' "

In Thompson v. Mattuschek, 134 Mont. 500, 506, 333 P.2d 1022, 1025, we commented as follows: "Under common law, livestock must be fenced in, but under range law, they must be fenced out. R.C.M.1947, § 46-1409. They may not be herded in damage of a neighbor, Herrin v. Sieben, 46 Mont. 226, 127 P. 323, and they wander at their own and their owner's risk of loss. Beinhorn v. Griswold, [supra]. But, in range country they may wander. They are not closed in."

In Montgomery v. Gehring, 145 Mont. 278, 283, 400 P.2d 403, 406 (1965) this court again recognized the fact that Montana remains an open range state and commented in this manner: "One releasing his livestock onto lands where he has a right to do so is under no duty to restrain them from entering another's unenclosed land. Such livestock owner is not responsible for damages occasioned by the entry of his livestock on such unfenced land through following their natural instincts. The exception to this, of course, is willful or intentional herding or driving of livestock onto another's unfenced land or placing them so near that trespass is bound to occur. Such is not the law in *all* jurisdictions, but it has been the law for a long time in Montana."

Thus, in open range country, the owner of livestock or one upon whose land such livestock is being pastured, has no duty to prevent the livestock from wandering. Since he has no duty to prevent such wandering, he cannot be said to be negligent if the livestock do wander—even if such wandering takes them onto a highway right of way which runs through the open range.

The testimony at the trial did not show that there was

any willful act or intention on the part of the defendant to drive the horse onto the highway right of way. For an example of what has been considered a negligent act by an owner of premises see Hopkins v. Ravalli County Electric Co-op, Inc., 144 Mont. 161, 395 P.2d 106. The plaintiff's case failed to establish any duty on the part of the defendant which the defendant had violated. The district court erred in not granting defendant's motion for a directed verdict.

The judgment appealed from is reversed with instructions to grant defendant's motion for a directed verdict and to enter judgment accordingly.

MR. JUSTICES ADAIR, DOYLE and CASTLES concur.

MR. JUSTICE JOHN C. HARRISON specially concurring:

It must be realized that Montana is and will remain for some time an open range oriented state. However, it must also be realized that being so oriented or not, we live in the last third of the twentieth century. This is a century which has brought us mixed blessings of automation and technology. As much as we may dislike it, there are certain technological changes which Montana can not react to, as a Brigadoon. Automobile travel is one of these.

This concurrence is meant to be limited to the facts of this case. The testimony in this case covers nearly 300 pages. The evidence is conflicting and contradictory as to the propensities of horses, the care of the horses by the appellants considering these horses escaped and went several miles when the appellant employed about twelve range riders to watch them, the adequacy of the fences, the adequacy of the river as a barrier and other issues of fact. While I must agree with the majority I feel deeply that this is a legislative matter that warrants the utmost consideration by our Legislature. It is not this court's function to make law, rather it is to interpret the law, but where, as here, we must follow the law given us I feel that justice requires that we point out that human needs should be

given consideration. The national government, in its interstate highway program, has fenced off the highways to protect life and limb, and we in this state are spending considerable sums in accident prevention. Aware as I am of the economic problems of our agriculture and livestock industry, I feel we as a people must soon approach legislatively this most humane need to protect our motorist.