**Harold W. READ, Plaintiff,**

v.

**Wiley BUCKNER, Defendant.**

**No. CV 80–74–M.**

United States District Court,
D. Montana,
Missoula Division.

May 6, 1981.

William A. Douglas, Libby, Mont., for plaintiff.

Shelton C. Williams, Williams Law Firm, Missoula, Mont., for defendant.

## OPINION AND ORDER

RUSSELL E. SMITH, District Judge.

Plaintiff alleges that injuries he sustained while he was riding a motorcycle on U. S. Highway No. 2 were caused by the presence of defendant's goats on the highway. In Count 1 the plaintiff claims that the defendant violated the provisions of MCA § 81–4–201 (1979), which reads:

It shall be unlawful for any owner or person in control of swine, sheep, or goats to willfully permit the same to run at large.

Damages are claimed under MCA § 81–4–202(1), which reads:

Any person violating 81–4–201 shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in the sum of $10 for the first offense and in the sum of $20 for each subsequent offense and shall be liable in damage to any party injured thereby, to be recovered in any court having competent jurisdiction.

In Count 2 the plaintiff relies on ordinary negligence.

Defendant contends that MCA §§ 81–4–201 and 202, originally enacted in 1895 (Act of March 6, 1895, MCA 1895, Penal Code §§ 1165, 1166), were enacted for the protection of the property of landowners and that, since there were no motor vehicles in common use at that time, they could not have been enacted for the protection of motorists. With this as a premise, defendant argues that a statute enacted for the protection of one class of people will not afford

relief to a class which the Legislature did not intend to protect.[1] However, for the reasons hereafter set forth, as I view the matter, the Act of 1895, as amended in 1945 (Chapter 169, 1945 Laws of Montana), probably resulted from a general modification of the open range law rather than from an intention to protect a specific class of persons.

The special legal status accorded open range livestock—cattle and to a lesser extent sheep and horses—was a product of the historical development of the open range system in Montana and must be viewed within this historical context. The lands of the plains lying between the Texas panhandle and Canada, and including the plains of the four states comprising the "heartland" —Montana, Wyoming, Colorado, and New Mexico—were the open range. In the period between 1850 and 1900 the range was truly open.[2] Cattle roamed at large over the plains with a minimum of supervision and care. In the beginning of this era, the range was used for the long drives from the southern plains, which were superior for breeding, to the northern plains, which were superior for grazing.[3] Gradually this use of the range gave way to a different one, a use in which the individual cattlemen grazed their herds around water holes on common land. Little attention was paid to the matter of land titles, and fences were incompatible with this manner of cattle raising.[4] The primary form of control imposed upon an otherwise uncontrolled range, the roundup, was a means of taking inventory, bringing back strays, and determining ownership of cattle.[5]

The open range in the heartland states eventually succumbed to the same pressures which had closed it earlier in the other plains states: homesteaders, fences, railroads, and the extravagance and waste inherent in the system itself. As the nineteenth century closed and cattle raising was shifting from a range to a ranch basis, these pressures brought alterations in the use of the open range. The range boundaries slowly contracted and the herds were smaller.[6] Just as the open range changed, the business practices changed. As the practices changed, the law changed also. Recognizing the need for cooperation, the cattlemen formed the Montana Stockgrowers Association and organized roundup districts. The whole of Chapter 4 of 81 MCA relating to the containment of livestock developed over the years in response to special needs, and the courts developed an exception to the open range law and imposed liability upon owners of livestock whose animals had been intentionally herded or driven onto another's unfenced land.[7]

Despite the fact that the special status afforded by the law to livestock had its origins in the needs of the owners of cattle and lands at a time when there were no automobiles, the Montana Supreme Court in *Bartsch v. Irvine Co.*, 149 Mont. 405, 427

1. *See* 73 Am.Jur.2d *Statutes* § 433 (1974); W. L. Prosser, Law of Torts § 36 at 192 (4th ed. 1978); *Champlin Refining Co. v. Cooper*, 184 Okl. 153, 86 P.2d 61 (1938). Accord, *Rauh v. Jensen*, 161 Mont. 443, 507 P.2d 520 (1973) (analyzing the problem on the basis of proximate cause).

2. J. Schlebecker, Cattle Raising on the Plains, 1900–1961, p. 1 (1963); M. Frink, When Grass Was King, p. 117 (1956).

3. J. Schlebecker, Cattle Raising on the Plains, 1900–1961, p. 5 (1963); Open Range in Old Montana and Wyoming, Montana Heritage Series No. 13.

4. *See Lazarus v. Phelps*, 152 U.S. 81, 14 S.Ct. 477, 38 L.Ed. 363 (1894). *See also* D. Boorstin, The Americans, pp. 19 and 29 (1974).

5. R. Fletcher, From Grass to Fences p. 44 (1960); W. P. Webb, The Great Plains, p. 255 (1931); M. Frink, When Grass Was King, p. 11 (1956).

6. M. Frink, When Grass Was King, pp. 16, 101–09 (1956).

7. Compare *Fant v. Lyman*, 9 Mont. 61, 22 P. 120 (1889), with *Monroe v. Cannon*, 24 Mont. 316, 61 P. 863 (1900). In *Fant* the Supreme Court sustained a verdict where the jury had been instructed that a landowner could not recover if sheep were driven onto his land for pasturage rather than for the purpose of maliciously injuring the land, while in *Monroe* the court sustained an award where the animals were driven onto unfenced lands for pasturage.

P.2d 302 (1967), recognized the open range status of a horse on a highway and held that its owner was not responsible where an automobile collided with a horse which had strayed onto a highway. *Bartsch* was followed in *Jenkins v. Valley Garden Ranch, Inc.*, 151 Mont. 463, 443 P.2d 753, 754 (1968). Then in *Sanders v. Mount Haggin Livestock Co.*, 160 Mont. 73, 500 P.2d 397, 400 (1972), the court applied the "willfully driven" exception, initially applied to the pasturage of animals on the open range, to animals on a highway. Thus the special status accorded cattle and horses grazing on the open range has been granted to the same animals on the highway.

It cannot be known but, as has been said, I think it probable that when, by the Act of March 6, 1895, the Legislature removed swine from the special status which permitted them to run at large on the open range, it was probably concerned with the general modification of the open range law rather than with the protection of a specific class of persons.[8] By Chapter 169, 1945 Laws of Montana, the Legislature affirmed its previous action as to swine, and for the first time it denied to goats and sheep the right to run at large. Even if in 1895 the Legislature intended to protect only landowners against damage caused by swine, it is difficult to believe that in 1945 a legislature fully aware of paved roads, automobiles, and accidents did not, by changing the status of sheep and goats, intend that the protection of the law should extend to all who were injured by violations of it. Certainly the language used contains no limitations. In short, I believe that Chapter 169, 1945 Laws of Montana, was a part of the historical process of conforming the open range law to the needs of a modern world.[9]

In my opinion, the complaint states a cause of action under MCA §§ 81–4–201 and 202, and the motion for summary judgment is denied.

No opinion is expressed as to the applicability of MCA § 60–7–201, or to whether the remedy given by MCA §§ 81–4–201 and 202 is exclusive.

---

8. The purpose of the Act of March 6, 1895, is not as self-evident as is the purpose of MCA § 81–4–210 prohibiting non-purebred bulls from running at large.

9. *See* the special concurrence by Justice John C. Harrison in *Bartsch v. Irvine Co.*, 149 Mont. 405, 427 P.2d 302, 305 (1967).