No. 88-190

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

VICTORIA S. WILLIAMS and LARRY
D. WILLIAMS,

        Plaintiffs and Appellants,

  -vs-

SPENCER SELSTAD and DAWN SELSTAD,

        Defendants and Respondents.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert Holmstrom, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Skaggs Law Firm; Robert H. Skaggs argued, Billings,
Montana

    For Respondent:

        Peterson, Schofield & Leckie; K.D. Peterson argued,
Billings, Montana

---

Submitted: October 11, 1988

Decided: December 13, 1988

Filed:

_Ethel M. Harrison_
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal arises from a grant of summary judgment in the District Court of the Thirteenth Judicial District, Yellowstone County, Montana. A motorist was injured when a horse ran onto the county highway located within a herd district. The lower court held these livestock owners owed no duty to the appellants as a matter of law. We affirm.

Appellants allege Victoria Williams was driving on 12-Mile Road near Shepherd, Montana, when a horse owned by the respondents ran onto the highway. In her attempt to avoid the horse, Victoria lost control of her vehicle and was injured. The parties have stipulated that the accident occurred on a secondary county road which is located within a "herd district," but which is not part of the Federal-Aid Primary Highway System.

Appellants argue the respondents negligently failed to maintain fences on their property adjoining 12-Mile Road, and negligently failed to restrain and confine the horse, "thereby permitting said horse to run at large." Appellants also allege that "Defendants knew, or should have known, that their negligence as heretofore described would in fact result in said horse running at large . . . " Appellants also rely on the doctrine of res ipsa loquitur.

Respondents moved to dismiss the action. After considering the stipulations, the motion to dismiss was treated by the District Court as a motion for summary judgment. By order and memorandum dated January 20, 1988, the District Court granted respondents' motion. The court held that herd district statues were designed only to protect other land owners and thus were not exceptions to the open range doctrine.

Although the open range doctrine relieves owners or possessors of livestock of a duty to keep their livestock from wandering onto the roadway, appellants argue that the herd district is a legislative exception to this rule. In support of this theory, appellants note the Legislature has otherwise modified the open range doctrine by preventing livestock from running at large in certain areas through enactment of §§ 60-7-101 through 60-7-205, MCA (state highways which have been designated as part of the National System of Interstate or Defense Highways or as part of the Federal-Aid Primary System). Similarly, they argue, because §§ 81-4-301 through 81-4-309, MCA, provide for the creation of herd districts and penalties for those who "shall willfully permit" livestock to "run at large within any herd district," the no-duty rule no longer applies. We disagree with this conclusion.

Recently we have restated that the law of the open range is the law of Montana and that the exceptions enacted by the Legislature have been carefully crafted. State ex rel. Martin v. Finley (Mont. 1987), 738 P.2d 497, 499, 44 St.Rep. 1050, 1052. We are here confronted with a livestock statute which makes it a misdemeanor to willfully allow livestock to roam at large within a herd district. The question we must answer is whether this statute was intended by the Legislature to impose a duty on livestock owners to keep livestock from wandering onto the roadway within the herd district.

Section 81-4-306, MCA, provides:

> (1) Any person who is the owner or entitled to the possession of any horses, mules, cattle, sheep, asses, hogs, or goats, who shall willfully permit same to run at large within any herd district, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than $50 or more than $250 for each offense. Each day that

3

each five head or less of such horses, mules, cattle, sheep, asses, hogs, or goats are willfully permitted to run at large shall constitute a separate offense.

(2) Any person who is the owner or entitled to the possession of any bull, stallion, or jackass over 1 year of age who shall willfully permit same to run at large within any herd district shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than $50 or more than $250 for each offense. Each day that such bull be permitted to run at large shall constitute a separate offense.

In order to determine whether the Legislature intended to create a duty to motorists, we look to the plain language of the statute and to the practical implications of imposing such a duty. Initially, we point to the definition of open range as defined in § 81-4-203, MCA, wherein the Legislature specifically included highways:

The term "open range" includes all highways outside of private enclosures and used by the public whether or not the same have been formally dedicated to the public.

Nothing in this definition, or in the herd district statutes removes the no-duty rule of the open range from applying to highways, whether they pass through a herd district or not.

In this case, we agree with the District Court that the herd district statutes were not designed to protect motorists but were only intended to protect landowners and owners of livestock. Recently, in State ex rel. Martin, supra, we examined the open range doctrine and the statutory exceptions which we noted were carefully crafted by the Legislature. Such exceptions include those enumerated under § 60-7-101 et seq., MCA, where the Legislature's goal was to strike a balance between the needs of Montanans who raise livestock

4

and the need to make Montana's highways safer for motorists. Similarly, the Legislature has specifically stated that certain kinds of livestock shall not wander at large on open range. Sections 81-4-204, -207, -208 and -210, MCA.

It is simply not clear that Montana's Legislature intended to create a duty owed to motorists through enactment of the herd district statutes. Appellants point to the Federal District Court's decision in Read v. Buckner (D.Mont. 1981), 514 F.Supp. 281, where, in a similar case, the court refused to grant the defendant's motion for summary judgment. The court agreed with the plaintiff's argument that §§ 81-4-201 and 81-4-202, MCA, create a civil cause of action by a motorist against one who willfully permits swine, sheep or goats to run at large. The court reasoned:

> Even if in 1895 the Legislature intended to protect only landowners against damage caused by swine, it is difficult to believe that in 1945 a legislature fully aware of paved roads, automobiles, and accidents did not, by changing the status of sheep and goats, intend that the protection of the law should extend to all who were injured by violations of it. Certainly the language contains no limitations.

Read, 514 F.Supp at 283.

The appellants urge us to accept this reasoning with respect to the herd district statutes. However, we find this reasoning unpersuasive. In fact, such a proposition merely begs the question: If the Legislature was aware of the problems these animals created for motorists, and intended to create civil liability to protect motorists, why did not the Legislature simply put that into the statues? We should not credit the Legislature with an intent to create a civil duty where there is nothing in the legislation to lead us to that conclusion.

5

We are not persuaded this was the Legislature's intent because imposing such liability under the herd district statutes would likely result in strange and amorphous liability rules. For instance, liability would result unexpectedly where the herd district is established only for a portion or portions of a year, or where districts are established in a checkerboard fashion along a county road. There are a multitude of scenarios imaginable which illustrate the problems with such a rule and which militate against that construction. We hold the Legislature did not intend to change the open range no-duty rules through enactment of the herd district statutes.

The judgment of the District Court is affirmed.

John Conway Harrison
Justice

We concur:

J. A. Turnage
Chief Justice

William E. Hunt Sr.

R. C. McDonough

X. C. Trieweiler
Justices

Mr. Justice John C. Sheehy, dissenting:


It is no credit to our Court that it follows meekly the fundamental errors of past decisions of this Court. When former interpretations of law take away a person's right of remedy, the basic underpinnings of those interpretations are called to account. For if equal justice under the law is the supreme goal of American justice, inequality of right or result defeats that goal. The legislature cannot be blamed for this decision; the legislature rightly determined when and how livestock owners should control their animals at large. It is judge-made law, and not legislative fiat, that applies livestock containment laws to automobiles. Nowhere do those laws make reference to automobiles.

The majority approached this case all wrong. The livestock laws were never intended to determine the rights of motorists vis-a-vis livestock owners arising out of animal-automobile collisions. The objectives of our livestock containment laws are to control unwanted breeding by stray animals, to distinguish between animals on open range and in herd districts, to fix who has a duty to fence between livestock owners and landowners; and to provide for the taking and return of estrays. These statutes have the venerability of antiquity: they preceded modern day vehicular traffic. They were enacted when road traffic consisted essentially of carriages and hay wagons, to which animals at large presented no danger. For their purposes, livestock containment laws have a valid application; for torts not related to their purposes, the livestock containment laws should be disregarded and the ordinary rules of negligence laws should apply. Then the task of the Court would be simple: was the defendant's negligence a proximate

cause of the motorist's injuries, and comparatively, did the plaintiff's want of care contribute to her injuries.

Application of livestock containment laws to animal-vehicular collisions, as in this case, creates a hotch-potch of dissimilar results from like incidents: the livestock owner is not liable if the animal is a purebred bull between July 1 and December 1; a mare, filly or jenny; or a cow. But the livestock owner may be liable if the animal is a mixed-breed bull anytime; a purebred bull between December 1 and June 1; a stallion, ridgeling or mule; or a sheep, a pig or a goat. When liability depends on the sex or kind of animal, or the time of the year and not the degree of negligence, the law is awry. Such confounded results say that some animals, at some times, are worth more than people.

How much more simple and concordant with our basic notions of liability it would be if we realized that the livestock containment laws were not applicable here, and decided this case on the well-worn and suitable statute of principle:

> . . . everyone is responsible not only for the results of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person except so far as the latter has willfully or by want of ordinary care brought the injury upon himself.

Section 21-1-701, MCA.

John C. Sheehy
—————————
Justice