ELLIS, Judge.
The defendant was the owner and operator of a dairy farm in Tangipahoa Parish north of Kentwood, Louisiana, and on February 10th, 1962 at approximately 6:15 P.M. thirty-five of his dairy cows and his horse had gotten out of the pasture in which they had been confined and were upon the right-of-way of U. S. Highway 51, which, under LSA-R.S. 3:2803 is designated as one of the highways upon which:
“No person owning livestock shall knowingly, willfully or negligently permit his livestock to go at large upon the following public highways of this state: * * * U. S. 51. Mississippi State Line to Laplace.”
The plaintiff at this time was driving his automobile in a northerly direction on U. S. Highway 51 and struck and killed one of the defendant’s cows, and he filed the *916 present suit for property damage to his automobile.
Defendant denied that he had negligently permitted his livestock to go at large upon the highway and affirmatively contended that the accident was caused solely by the negligence of the plaintiff in operating his vehicle at a rate of speed in excess of the legal limit; at an excessive rate of speed in view of the circumstances; failing to keep a proper lookout; failing to keep his vehicle under control, and, alternatively, in failing to heed the last clear chance to avoid the accident. Defendant also alternatively plead contributory negligence in bar of plaintiff’s recovery. The defendant also reconvened for the sum of $225.00 which he alleged was the cost and value of the cow and for $10.00 as a wrecker fee paid for the removal of the dead cow from the highway.
The plaintiff brought a third party demand against State Farm Mutual Automobile Insurance Company who had issued a policy to him against liability for property damage up to $5000.00, and set forth the reconventional demand of the defendant for $235.00 to compensate him for the loss of the cow and wrecker charges and prayed for judgment against his insurer in the event he should be cast for this amount.
The case was duly tried and judgment was rendered based upon written reasons in favor of the plaintiff and against the defendant for $525.00 which the lower court found to be the value of the plaintiff’s automobile which was a total loss, together with interest from date of judicial demand until paid and all costs. From this judgment defendant has appealed.
The lower court correctly stated the law of Louisiana as placing the burden of proving freedom from negligence on the owner of the cow where, as in the present case, the cow is struck upon a “Stock Law Highway,” such as U. S. Highway 51. The law in such a case is fully discussed in Raziano v. T. J. James & Co., La.App., 57 So.2d 251, Parker v. Young, La.App., 122 So.2d 699; and very recently, by our brethren of the Third Circuit in Colomb v. McDonald, La.App., 131 So.2d 84. The record amply supports the finding of fact by the lower court as shown by its concise written reasons for liability. We quote in part from those reasons as follows:
“This is a cow case. Plaintiff’s automobile struck a cow belonging to the defendant while plaintiff was driving north on Highway 51 in Tangipahoa Parish near Kentwood, Louisiana. The accident happened on February 10, 1962 at about 6:15 P.M. It was dark and plaintiff’s headlights were burning. As a result of the accident, plaintiff’s 1959 English Ford was a total loss, as was the cow.”
******
“There is no doubt in my mind that the plaintiff was free from negligence under the law. He had every right to expect the highway to be clear of cattle, and was driving at a safe and reasonable rate of speed under the circumstances. The fact of the existence of other cows to the south of the cow which was struck by plaintiff along the edge of the road does not alter this circumstance. Defendant’s gate was closed with a piece of clothesline wire. After the accident, it was found that this piece of wire had been straightened out by the gate having been opened. It would appear that the gate was actually pushed open by the cattle from within, and that the wire was not adequate to hold the gate closed. Defendant points out that no cattle had ever escaped from this pasture before. It is the opinion of the Court that this does not show that defendant is now free from negligence, but rather that he has been lucky in the past.”
To enlarge somewhat upon the facts as shown in the written reasons for judgment by the lower court, the record shows that at the time the plaintiff approached the *917 scene of the accident most of the cows were being driven back into their pasture but were all on the highway right-of-way and plaintiff testified positively that he did not see these cows. It is argued strongly that his failure to see these cattle off to the side of the highway constituted contributory negligence. We do not believe under the facts this contention of the defendant is well founded. Although it was dark, and plaintiff’s headlights were burning, it was also a time of day when it is most difficult to see and plaintiff properly kept his vision focused upon the road in front of him. There was only one cow which came into the highway and that was the one plaintiff struck and killed. This is a major highway with a wide right-of-way on each side of the paved portion and the driver of an automobile after dark cannot be charged with the duty of seeing cattle which are not proven to have been within the range of his lights and where it would be necessary for him to take his eyes off of the road ahead.
It is also shown that the cow which was struck by the plaintiff came suddenly into, and across, the paved portion of the highway directly in front of the plaintiff’s automobile, which was traveling within the legal speed limit and was also reasonable under the circumstances. Plaintiff was not charged with the duty to anticipate that a cow would be upon this highway and dart suddenly across in front of his automobile. He was faced with a sudden emergency and could not avoid striking this cow.
Although the written reasons of the lower court refer to the opening in the defendant’s pasture as the "gate” it was referred to as a “gap”. While the writer has his own idea as to just how a gap looks and is constructed, having seen many, the record is devoid of such information and it is impossible to pinpoint the exact construction of this gap and how it was kept closed, other than as found by the district court that it was closed with a piece of clothesline wire which, after the accident, was found to have been straightened out and it would appear the gate was actually pushed open by the cattle. The burden was upon the defendant to show the adequacy of the clothesline wire, which evidently he would have been unable to sustain, else the cattle would not have been able to push this apparently weak fastener apart.
We are therefore of the opinion that the defendant was correctly held liable by the lower court for the damages to the plaintiff’s car.
We believe, however, that the award of $525.00 for the value of the car is excessive as it was based upon the replacement retail price of a new 1959 English Ford. Plaintiff’s car was a 1959 English Ford and thus three years old. It is true that it had $110.00 worth of work done on it in September and October of 1961. The car was a total loss as the estimate to repair it was $660.00. An automobile salesman employed by Maurin Motor Company who sold the car to plaintiff originally did not testify what plaintiff had paid for it but testified he was familiar with the “price of a new 1959 English Ford on the date of February 10, 1962, which was the date of the accident” and “It would be between five and a quarter and five and a half.”
The defendant offered the testimony of a Mr. Inlcenbrandt, who was in the auto repair, automobile wholesale and retail business for approximately twenty years and had looked at the 1959 English Ford involved in this case. This witness had two lots from which he handled a used car business in New Orleans, and a wholesale business in Meridian, and in Jackson, Mississippi, and one in Baton Rouge, Louisiana. Although apparently he had much experience in the used car business, his testimony is rather difficult to understand. In one place he testified if he owned the car “a man could buy it for between $375.00 and $400.00 because I would not have had it any other way. In that approximate *918 vicinity.” In another place he testified he had bought and sold English Fords and that he could replace a 1959 model for approximately “from $300.00 to $400.00 * * * when asked if he was testifying to the wholesale or retail price as being the same he answered, “And you might as well figure it that way, because you couldn’t give one away. On cross examination he was asked if he knew where he could buy one for $200.00 and answered, “Yes, sir, I can buy one for $200.00 today. Not a ’59, sir, but a 1960 model.” When asked if he would be willing to sell that car to the plaintiff for $200.00 he said, “No, sir. No, sir,” that he had to “make a living along the way,” but that he would be glad to get $25.00 to $35.00 profit on the basis of that, which would be $225.00 to $235.00 for the automobile.
Considering all the testimony we believe a fair value would be $300.00 for the automobile. Accordingly, it is ordered that the judgment of the lower court be reduced to the sum of $300.00 and as thus amended the judgment is affirmed.
Affirmed.