IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 81-266

JAMES V. AMBROGINI and
ROBERT D. FLINT,

      Plaintiffs and Appellants,

    v.

SONNY TODD, THE STATE OF MONTANA
and MONTANA STATE DEPARTMENT OF
HIGHWAYS,

      Defendants and Respondents.

O R D E R

FILED

APR 15 1982

Thomas   Kearney

CLERK OF SUPREME COURT
STATE OF MONTANA

PER CURIAM:

IT IS ORDERED that the fourth sentence of the third paragraph of the February 25, 1981, opinion in this matter be amended to state: "A fence was constructed and a rope gate installed approximately mid-way up the lane to the Todd ranch."

IT IS FURTHER ORDERED that the second sentence of the fourth paragraph of the same opinion be amended to state: "The rope gate mid-way up the lane was a nuisance to his customers."

WITH THIS AMENDMENT of the facts, the Petition for a Rehearing of this matter is denied.

DATED this 15th day of April, 1982.

_____
Chief Justice

_Frank B. Morrison_

_Gene B. Daly_

_John C. Sheehy_

_John Conway Harrison_
Justices

No. 81-266

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

JAMES V. AMBROGINI and
ROBERT D. FLINT,

Plaintiffs and Appellants,

vs.

SONNY TODD, THE STATE OF MONTANA
and MONTANA STATE DEPARTMENT OF
HIGHWAYS,

Defendants and Respondents.

---

Appeal from:   District Court of the Sixth Judicial District,
In and for the County of Sweet Grass
Honorable Jack D. Shanstrom, Judge presiding.

Counsel of Record:

For Appellants:

Gregory O. Morgan, Bozeman, Montana

For Respondents:

Landoe, Brown, Planalp, Kommers and Lineberger,
Bozeman, Montana
J. Daniel Hoven, Office of Attorney General, Helena,
Montana

---

Submitted on briefs: November 18, 1981

Decided: February 25, 1982

Filed:FEB 25 1982

Thomas J. Kearney
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

The plaintiffs, James Ambrogini and Robert Flint, appeal from summary judgment entered by the Sixth Judicial District Court in favor of both defendants, Sonny Todd and the Montana Department of Highways.

On May 3, 1979, Flint was driving a truck owned by Ambrogini when it collided with two angus heifer calves on Highway 10. The calves were owned by Todd. In November of 1979, the plaintiffs filed separate actions against defendant Todd alleging that Todd's negligence had caused the collision. The complaints were amended in April, 1980, to include the State of Montana and the Montana Department of Highways as defendants. These claims have since been consolidated.

The facts are undisputed. In 1936, the State of Montana acquired a highway right-of-way easement from the prior owners of the Todd ranch. The State paid the prior owners $323.75 to construct a fence along Highway 10. A fence was constructed and a stock gate installed at the lane entrance. Through the years, the fence has been maintained by the owners of what is now known as the Todd ranch.

Todd sells cattle and horses. The stock gate at the lane entrance was a nuisance to his customers. Todd did not wish to replace the stock gate with a cattle guard due to hazards posed to horses. Therefore, he removed the stock gate and lined the entire one hundred yard long lane with a mesh fence topped with barbed wire and wooden posts. Todd also installed a gate leading from the lane into the parking lot and turn-around area used by his customers. Todd testified that since the entire land and lane were fenced, he felt there to be no need to install a stock controlling

-2-

device at the highway entrance to the lane. In fact, the lane was fenced in order to avoid the necessity of having a stock controlling device at the lane entrance.

On the night of May 2, 1979, approximately 50 head of angus heifers were contained in their pen on the Todd ranch. The pen was enclosed by mesh fence very similar to that described as lining the lane. The cattle, some of which were in heat, broke through this fence and entered a shelter belt area surrounded by four-strand barbed wire fence. After grazing in the shelter area for some time, the cattle crawled through that fence without disturbing it and entered the parking lot and turn-around area used by Todd's customers for loading and unloading stock. The gate leading from that area to the lane was open. The calves walked through the open gate, down the lane and onto Highway 10.

The truck driven by Flint collided with two of the heifers while they were on the highway. The truck went into the borrow pit and upset. Flint was injured.

On January 12, 1981, defendant Montana Department of Highways moved for summary judgment pursuant to Rule 56 of the Montana Rules of Civil Procedure. On March 10, 1981, after considering the briefs, depositions, stipulations and arguments of the parties, the court granted summary judgment for the following reasons:

(1) the State had no statutory duty to erect a cattle guard, gate or stock control device at the Highway 10 entrance to Todd's lane;

(2) the failure to construct such a device resulted in no unreasonable risk of harm to the travelling public; and

(3) the lack of a stock control device at the entry way to the ranch was not, as a matter of law, the proximate

cause of the accident.

Defendant Sonny Todd moved for summary judgment on March 23, 1981. The court granted his motion on May 6, 1981, for the following reasons:

(1) Section 60-7-201, MCA, imposes liability on a livestock owner only for _negligent_ conduct which results in his livestock occupying a highway and causing injury;

(2) there was no evidence presented at trial showing defendant's fence to be constructed or maintained in a negligent manner; and

(3) the ranch owner, as a matter of law, had no duty to anticipate that the cattle would escape through two fence lines and enter a turn-around area, therefore, making it necessary for Todd to either keep the gate between the area and the lane shut when not in use or construct a stock control device at the entrance to the lane.

The issues presented to this Court on appeal are:

(1) Did the defendant, Montana Department of Highways, have a duty to require and maintain a cattle guard or gate at the ranch entrance?

(2) Did the defendant, Sonny Todd, have a legal duty to construct and maintain a fence to prevent livestock from entering the highway?

(3) Is there sufficient evidence upon which reasonable men could conclude that Todd was negligent in either maintaining or constructing the fence through which the cattle passed?

We uphold summary judgment for the Montana Department of Highways and reverse summary judgment for the defendant, Sonny Todd. We remand this case for a determination of whether or not Todd was negligent for not constructing a stock control device at the lane entrance or keeping the

-4-

gate from the lane to the turn-around area shut at all times during which it was not in use. If the trier of fact finds Todd negligent, it must then determine whether his negligence was the proximate cause of the collision on May 3, 1979.

Briefs, depositions and testimony at hearings established several undisputed, pertinent facts. The Todd ranch is located off Highway 10 approximately 6.5 miles east of Big Timber. This is an open range area. Highway 10 is classified by the Montana Department of Highways as being part of the federal-aid primary system. It is not a controlled access highway. The section of the highway near the Todd ranch was constructed prior to July 1, 1969, and has not been reconstructed since that date. This section has never been designated a "high-hazard area" pursuant to section 60-7-102(2), Montana Code Annotated.

The above facts are relevant to sections 60-7-101 through 60-7-103, MCA, governing when the Montana Department of Highways is responsible for the fencing of highways, as well as to sections 60-7-201 through 60-7-203, MCA, governing when a rancher is liable for damages caused by the presence of his cattle on a highway. These statutes are controlling in this situation and we focus on them as the basis for this decision.

### THE LIABILITY OF THE DEPARTMENT OF HIGHWAYS

Section 60-7-101, MCA, and its legislative history indicate that the 1974 legislature intended to increase the safety of the motorist travelling through the ranching areas of Montana. Section 60-7-103, MCA, delegates the responsibility for the motorists' safety to the Montana Department of Highways. It states:

-5-

"60-7-103. Department to fence right-of-way through open range. (1) The department shall fence the right-of-way of any part of the state highway system that is constructed or reconstructed after July 1, 1969, through open range where livestock present a hazard to the safety of the motorist. Where a fence is constructed, adequate stock gates or stock passes, as necessary, shall be provided to make land on either side of the highway usable for livestock purposes.

"(2) The department shall erect a fence in every high-hazard area as promptly as possible, and the cost of such construction is an expenditure for the enforcement of federal-aid highway safety programs. Gates, stock underpasses, water facilities, and cattle guards may be installed where necessary to make the land on either side of the highway usable for livestock purposes or where a public right-of-way intersects the state highway."

Section 60-7-102(1) and (2), MCA, defines "open range" and "high-hazard area" as follows:

"(1) 'Open range' means those areas of the state where livestock is raised and maintained in sufficient numbers as to constitute a significant part of the local or county economy and where such animals graze and move about generally unrestrained by fences.

"(2) A 'high-hazard area' is a segment of the primary highway system passing through open range where livestock moves on or across the highway often enough, in enough numbers, and with enough ease of access that such animals create a significant traffic safety hazard. Evidence bearing on whether animals on the highway pose a significant hazard includes, without limitation, past accident records, the opinions of persons qualified by experience to evaluate the relative safety of road conditions, and the terrain around the road."

Since the passage of section 60-7-103, MCA, the Montana Department of Highways is obligated to fence any right-of-way constructed or reconstructed after July 1, 1969, through a hazardous open range area. In addition, the Department must also fence any existing right-of-way which it classifies as being in an open range area containing a sufficient number of roaming livestock to constitute a significant

-6-

traffic safety hazard. These fences must include stock gates, stock passes and cattle guards wherever necessary.

The instant situation is not covered by these statutes. Depositions of two employees of the Department of Highways establish that no construction or reconstruction has been completed on the relevant highway section since July 1, 1969. In addition, the Montana Department of Highways has not classified this segment of highways as a "high-hazard area." Therefore, pursuant to section 60-7-103, MCA, the Department of Highways has no statutory duty to construct a fence and thus no duty to construct a stock control device.

Plaintiffs also rely on section 81-4-103, MCA, as a basis for establishing negligence on the part of the Department of Highways. That section states:

> "Civil Liability. Any person constructing or maintaining any fence of any kind not described in 81-4-101 is liable in a civil action for all damages caused by reason of injury to stock resulting from such defective fence."

Section 81-4-101, MCA, defines a legal fence. The definitions are based on height and fencing material. Plaintiffs present no facts alleging that the Todd ranch fence fails to conform to the definition of a legal fence. Rather, plaintiffs allege that section 81-4-102, MCA, requires the presence of an auto pass in order to create a legal fence. This allegation is not well founded.

Section 81-4-102, MCA, states merely that the presence of an auto pass will not make an otherwise legal fence illegal. This section ensures that a fence need not be a certain height where vehicles pass through it in order to retain its legal characterization. It does not imply that a fence without an auto pass is illegal. As there are no other allegations by plaintiffs that the Todd fence is

-7-

illegal, the Department of Highways is not liable to plaintiffs for construction of an illegal fence pursuant to section 81-4-103, MCA.

Finally, plaintiffs assert a general duty on the part of the State to build and maintain highways in a safe manner, State ex. rel. Byorth v. District Court, 14th Judicial District (1977), 175 Mont. 63, 572 P.2d 201, and to ensure that the roads are not constructed negligently. Negligent conduct is that which falls below the standard established by law for the protection of others against unreasonable risk and necessarily involves the concepts of reasonableness and foreseeability. Mang v. Eliasson (1969), 153 Mont. 431, 435, 458 P.2d 777.

The State paid in 1936 for the construction of a right-of-way fence on the Todd ranch. Undisputed evidence indicates that the ranch owners have since maintained the fence and that the fence has been, and currently is, in excellent condition. The lane leading from the Todd ranch to Highway 10 is totally fenced. It contains a gate with an adequate latch. These facts made it reasonable for the Department of Highways to believe the road to be safe from the intrusion of livestock from the Todd ranch. The actions of the cattle in this particular instance were not foreseeable by the Department of Highways.

As the State has no statutory or general duty to require a cattle guard or stock gate at the lane entrance to the Todd ranch, failure to construct such a device was not negligence on the part of the State. It is fundamental to the law of torts that there can be no negligence if no duty exists. Prosser on the Law of Torts §30 (1971). We uphold the summary judgment determination for defendant Department

-8-

of Highways as plaintiffs failed to establish any duty, a material element of the negligence claim.

## THE LIABILITY OF SONNY TODD

The District Court found the segment of Highway 10 involved in this case to be located in an open range area. Generally, an open range designation implies that an owner is not liable for his wandering livestock. Beinhorn v. Griswold (1902), 27 Mont. 79, 90, 69 P. 557, 558; Thompson v. Mattuschek (1959), 134 Mont. 500, 506, 333 P.2d 1022, 1025; Bartsch v. Irvine (1967), 149 Mont. 405, 427 P.2d 302. The open range tradition has become increasingly eroded over the years as a greater number of motorists have appeared on Montana's roads and highways. Sections 60-7-201 and 60-7-202, MCA, are the statutory embodiments of this erosion.

Prior to 1974 the statutes made it unlawful for the owner of livestock to wilfully allow them to graze on the right-of-way of fenced federal and state highways. See section 32-21-178, R.C.M., 1947. The specific language employed was "shall not wilfully permit." In 1974, the successor of that section was amended to state, in relevant part:

> "60-7-201. Grazing livestock on highway unlawful. A person who owns or possesses livestock may not permit the livestock to graze, remain upon, or occupy a part of the right-of-way of:
>
> ". . .
>
> "(2) a state highway designated by agreement between the highway commission and the secretary of transportation as a part of the federal-aid primary system, except as provided in 60-7-202."

Plaintiffs assert that the 1974 amendment resulted in a standard of absolute liability for conduct by a rancher resulting in a failure to keep his livestock off a highway.

-9-

We cannot agree. Prior to 1974, a rancher was liable only when he wilfully allowed his livestock to roam on a highway. The legislature's choice of the term "may not permit" implies the reduction of the wilfullness standard to one of negligence. Practically every state which has considered the issue agrees that the use of words such as "permit," "allow" or "suffer" implies liability for negligent conduct as opposed to absolute liability. See, e.g., Santanello v. Cooper (Ariz. 1970), 106 Ariz. 262, 475 P.2d 246; Porier v. Spivey (Ga. 1958), 97 Ga. App. 209, 102 S.E.2d 706; Kupper v. Connolly (La. App. 1963), 153 So.2d 915; Sutton v. Duke (N.C. 1969), 7 N.C. App. 100, 171 S.E.2d 343, aff'd. (1970), 277 N.C. 94, 176 S.E.2d 161; Burback v. Bucher (Wa. 1960), 56 Wash.2d 875, 355 P.2d 981; Sparks v. Doe (Ky. 1964), 379 S.W.2d 252; Dollarhide v. Knight (Miss. 1953), 216 Miss. 318, 62 So.2d 367.

Ranchers in Montana are now liable for negligent rather than wilfull conduct which results in the presence of their cattle on the right-of-ways.

Section 60-7-202, MCA, contains the exclusions to section 60-7-201, MCA, and states:

> "60-7-202. Exclusions. Section 60-7-201 does not apply to the following:
>
> "(1)  livestock on state highways under the charge of one or more herders;
>
> "(2)  the parts of fenced highways adjacent to open range where a highway device has not been installed to exclude range livestock;
>
> "(3)  the parts of a state highway or a part of the federal-aid primary system which the department of highways designates as being impracticable to exclude livestock. These portions of the highway shall be marked by proper signs in accordance with the department's manual and specifications for a uniform system of traffic-control devices."

The undisputed evidence clearly indicates that Todd's heifers were not in the charge of one or more herders on the night of May 2, 1979. Therefore, exclusion number one does not apply.

We find that exclusion number two applies only to livestock which wander from open range onto adjacent fenced highway. Open range is defined in section 60-7-102, MCA, as being an area where animals graze and move about generally unrestrained by fences. Todd's heifers were restrained by fences prior to breaking free and roaming onto Highway 10. Therefore, exclusion number two is inapplicable.

Finally, no evidence was presented to indicate that the Department of Highways designated the relevant section of Highway 10 as impracticable for excluding livestock. Exclusion number three is also inapplicable.

As Todd does not qualify for any of the exclusions found in section 60-7-202, MCA, we find him subject to section 60-7-201, MCA. We hold that Todd has a legal duty to exercise due care in preventing his livestock from wandering on Highway 10.

The fence surrounding the Todd ranch was in excellent condition. However, he did not construct a stock control device at the entrance to his lane because he had constructed fence along the entire length of the lane and had installed a gate further up the lane toward the farm itself. Through some inadvertent action, the gate to the lane was open on the night of May 2, 1979, and early morning of May 3, 1979. The reasonableness of Todd's conduct is for a jury to decide.

We remand this case to the District Court for trial as to defendant Todd. We affirm summary judgment in favor of the State.

_____
Justice

-11-

We Concur:

_Charles S. Haswell_
Chief Justice

_____ ~~Stricken by order of the Court.~~

_John Conway Harrison_

_John C. Sheehy_
Justices

Mr. Justice Gene B. Daly, deeming himself disqualified, did not participate in this decision.