NO.  94-208

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

LORI INDENDI,

       Plaintiff and Appellant,

   -vs-

"DOC" WORKMAN and
CHRYSTAL WORKMAN,

       Defendants and Respondents.

FILED

JUL 25 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fifth Judicial District,
              In and for the County of Madison,
              The Honorable Frank M. Davis, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

          Karl Knuchel, Attorney at Law, Livingston,
          Montana

       For Respondents:

          Michael C. Coil; Angel, Screnar, Coil, Bartlett &
          Fay, Bozeman, Montana


Submitted on Briefs:  March 9, 1995

Decided:  July 25, 1995

Filed:

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

The Fifth Judicial District Court, Madison County, directed a verdict in favor of "Doc" Workman and his daughter Chrystal Workman (the Workmans) and against Lori Indendi (Indendi). Indendi appeals. We affirm in part and reverse and remand.

The following issue is dispositive of the case:

Did the District Court err by directing a verdict for the Workmans and against Indendi following Indendi's case-in-chief concerning the issues of negligence, res ipsa loquitur, and negligence per se?

The Workmans own a home and thirty-three acres between the Madison River and Highway 84, a federal-aid primary highway. The land is split into three pastures. All of the pastures are bordered to the north by the Madison River. Pasture #1 is located closest to Norris, Montana. Bureau of Land Management (BLM) land borders pasture #1 to the south and Highway 84 borders the BLM land to the south. Pasture #2 is the middle pasture with the smallest amount of acreage. The Workmans' family home is located in pasture #2 and the Workmans' driveway travels out of pasture #2 to the south, connecting with Highway 84. A two-wire electric gate controls the access between the driveway and pasture #2. Both sides of the Workmans' driveway are bordered by BLM land. Pasture #3 is the largest of the pastures and is closest to Bozeman, Montana. Highway 84 bisects pasture #3 and State and BLM land border pasture #3.

On August 10, 1991, after Chrystal Workman and a friend had finished riding horses for the day, they took one horse to pasture

#3 leaving the other horse, a palomino, and a mule in pasture #2. Upon their return from pasture #3, Chrystal and her friend noticed that the palomino and the mule were missing and the electric gate at the beginning of the driveway was broken. It is theorized that the mule broke through the gate and the horse and mule left pasture #2 and headed for the highway.

That night, Indendi was travelling from Bozeman on Highway 84 in her 1969 Volkswagen bus when, in the path of her vehicle, she saw two eyes reflecting off of her headlights. Indendi swerved, applied her brakes and successfully missed hitting the animal. Another animal, however, was just behind and to the right of the first one. Indendi was unable to miss the second animal, the Workmans' palomino horse. Indendi hit the palomino, killing it instantly; Indendi suffered personal injuries and totalled her vehicle.

Indendi subsequently filed a complaint in the District Court alleging that the Workmans were negligent and in violation of several statutory provisions relating to fencing, herding livestock and an open range exception. The Workmans counter-claimed for the loss of the horse. After Indendi presented her case, the District Court directed a verdict in favor of the Workmans.

## Standard of Review

The law does not favor directed verdicts. Sweet v. Edmonds (1976), 171 Mont. 106, 109, 555 P.2d 504, 506. The district court may grant a directed verdict only when it appears that the non-moving party cannot recover on any view of the evidence, including

3

the legitimate inferences drawn from that evidence. Barrett v. Larsen (1993), 256 Mont. 330, 335, 846 P.2d 1012, 1016. With these principles in mind, we examine whether the District Court properly granted a directed verdict in favor of the Workmans.

> Did the District Court err by directing a verdict for the Workmans and against Indendi following Indendi's case-in-chief concerning the issues of negligence, res ipsa loquitur, and negligence per se?

We consider the legal theories put forth by the parties separately.

## Negligence

Indendi argues that the District Court made certain factual assumptions that are not supported by the record. Indendi claims that the assumptions made by the court allowed the court to determine that the Workmans had no liability under the law and, without a duty to Indendi, the Workmans could not be found negligent. According to Indendi, the fallacy in this reasoning results from the fact that the District Court made the assumption that the Workman ranch and the surrounding land was "open range." Further, the court assumed that the property was essentially fenced land. Indendi asserts that neither of these facts had been proven and, therefore, the Workmans do not fit within the statutory exclusion assessing liability to owners of livestock which wander onto federal-aid primary highways. Indendi argues that the court incorrectly directed a verdict because there were issues of fact for the jury to decide.

The Workmans argue that the highway involved here has been

4

designated as open range by this Court in prior cases. Jenkins v. Valley Garden Ranch, Inc. (1968), 151 Mont. 463, 443 P.2d 753 (involving Highway 287-A); Estate of Bartsch (1967), 149 Mont. 405, 427 P.2d 302 (involving Highway 289). The Workmans do, however, concede that Highway 84 is part of the federal-aid primary system and that when a highway is part of the federal-aid primary system the open range doctrine does not apply unless they can satisfy the statutory exception set forth in § 67-7-202, MCA. The Workmans argue that because their land is substantially fenced, has no livestock device, and sits within the open range, that they do fall under the exclusionary language of § 60-7-202(2), MCA, and they, therefore, do not have a duty to keep their livestock from the highway.

After Indendi had submitted her case, the District Court directed that a verdict be entered for the Workmans. In directing a verdict for the Workmans, the District Court concluded that the evidence submitted by Indendi demonstrated that this was open range and that the exclusion contained in § 60-7-202(2), MCA, applied. Our careful review of the record demonstrates that there was no factual basis for that directed verdict.

The court correctly stated that the following statutes are applicable to the facts of the case:

> 60-7-201. Grazing livestock on highway unlawful. A person who owns or possesses livestock may not permit the livestock to graze, remain upon, or occupy a part of the right-of-way of:
> (1) a state highway running through cultivated areas or a part of the fenced right-of-way of a state highway if in either case the highway has been designated by agreement between the highway commission and the

5

secretary of transportation as a part of the national system of interstate and defense highways; or
    (2) a state highway designated by agreement between the highway commission and the secretary of transportation as <u>a part of the federal-aid primary system, except as provided in 60-7-202.</u>

    60-7-202. Exclusions. Section 60-7-201 does not apply to the following:
    (1) livestock on state highways under the charge of one or more herders;
    (2) <u>the warts of fenced hishwavs adjacent to open range where a highway device has not been installed to exclude range livestock;</u>
    (3) the parts of a state highway or a part of the federal-aid primary system which the department of transportation designates as being impracticable to exclude livestock. These portions of the highway shall be marked by proper signs in accordance with the department's manual and specifications for a uniform system of traffic-control devices.

    60-7-203. **Penalty**. A person who violates 60-7-201 is guilty of a misdemeanor and is subject to a fine of not less $5 or more than $100 for each offense. In a civil action for damages caused by collision between a motor vehicle and a domestic animal or animals on a highway brought by the owner, driver, or occupant of a motor vehicle or by their personal representatives or assigns or by the owner of livestock, there is <u>no presumvtion or inference that the collision was due to negligence on the part of owner or the person in possession of the livestock or the driver or owner of the vehicle.</u> [Emphasis added.]

The court found that Indendi had not made a prima facie case for negligence because no duty existed on the part of the Workmans. The court, however, based this assessment on the Workmans' ability to meet the exclusionary provisions of subsection (2) of § 60-7-202, MCA, as it relates to the owners of livestock and their statutory responsibility to keep their animals from federal-aid highways. The record does not support the court's findings with regard to the Workmans' non-liability. The District Court reasoned as follows:

6

> The record in this case without dispute was that
> Defendants' property is open range [sic]. It consists of
> sporadically fenced land belonging to the Bureau of Land
> Management (hereinafter referred to as BLM) and the
> State. Livestock graze and move about generally
> unrestrained by fences.

The factual statements in the court's memorandum and order are not substantiated by the record before us.

In the court's memorandum, written to support its determination that the Workmans did fall under the exclusion of § 60-7-202(2), MCA, and therefore did not have a duty to keep livestock on their ranch, the District Court distinguished this case from the facts of Ambroyini v. Todd (1982), 197 Mont. 111, 642 P.2d 1013, which stated:

> We find that exclusion number two [of § 60-7-202, MCA]
> applies only to livestock which wander from open range
> onto adjacent fenced highway. Open range is defined in
> section 60-7-102, MCA, as being an area where animals
> graze and move about generally unrestrained by fences.
> Todd's heifers were restrained by fences prior to
> breaking free and roaming onto Highway 10. Therefore,
> exclusion number two is inapplicable. . . .

> We hold that Todd has a legal duty to exercise due care
> in preventing his livestock from wandering on Highway 10.

> The fence surrounding the Todd ranch was in
> excellent condition. . . Through some inadvertent
> action, the gate to the lane was open on the night of May
> 2, 1979, and early morning of May 3, 1979. The
> reasonableness of Todd's conduct is for a jury to decide.

Ambroqini, 642 P.2d at 1019. The District Court noted that Ambroqini did not include an "open range" consideration as does the present case. Yet the District Court here failed to recognize that, in this case as in Ambrosini, the animals had been confined before they broke through the gate or fence.

While the District Court distinguished Ambroaini from the case

7

at hand based upon the "open range" land that appears in the current case, the evidence presented in Indendi's case did not establish that the land in question was "open range." Without such a distinction, the facts of Ambroqini are so close to those in this case, that it is pertinent authority and a directed verdict was inappropriate.

The directed verdict was based upon an application of the statutory exclusion to the requirement that an owner of livestock may not permit his livestock to graze upon a state highway designated for the federal-aid primary system. That exclusion is set forth in § 60-7-202(2), MCA. In order to come within the terms of that exclusion, a party must show: (1) that the highway in question was "fenced;" (2) that it was adjacent to open range; and (3) a highway device had not been installed to exclude range livestock. Section 60-7-202(2), MCA. The record before us does not support a finding that Highway 84 was fenced, nor does it support a finding that Highway 84 was adjacent to open range.

Section 60-7-102, MCA, specifically defines open range as follows:

> (4) "Open range" means those areas of the state where livestock is raised and maintained in sufficient numbers as to constitute a significant part of the local or county economy and where such animals graze and move about generally unrestrained by fences.

There is no evidence in the record before us to establish that livestock were raised in sufficient numbers to constitute a significant part of the economy. In addition there is no evidence which establishes that such animals graze and move about generally

8

unrestrained by fences.

In the absence of proof that the land was open range, and the further absence of proof establishing that Highway 84 was a "fenced highway," the court could not properly direct a verdict premised upon the Workmans' satisfaction of the duty exclusion of § 60-7-202(2), MCA.

A directed verdict for the Workmans was possible only if Indendi's case demonstrated that no other outcome was possible. Clearly that test was not met here as there was no factual basis for the entry of the directed verdict for the Workmans.

We hold that the District Court erred in directing a verdict for the Workmans.

## Res Ipsa Loauitur

Indendi argues that the theory of res ipsa loquitur applies to the facts of this case and that the court incorrectly dismissed this theory from her complaint. The Workmans argue that the court correctly determined that res ipsa loquitur is improper because § 60-7-203, MCA, disallows any presumptions of negligence in accidents between livestock and vehicles.

Section 60-7-203, MCA, eliminates any presumptions that might arise from the type of accident which occurred here. Without a presumption of liability, res ipsa loquitur, which is itself a presumption of negligence so long as certain conditions are met, is inappropriate. The court correctly struck Count V from Indendi's complaint based upon its conclusion that this theory of law did not apply to the case. Thus, we affirm the court's conclusion in this

9

regard and further action in this case should not include the theory of res ipse loquitur

## Negligence per se

Indendi argues that the fences constructed by the Workmans around their 33-acre tract did not constitute a legal fence--the Workmans used an electrified fence which consisted of a one-wire electrified strand with a two-wire electrified strand gate. Indendi relies on the legal fence definition in § 81-4-101, MCA, and contends that because the Workmans did not maintain a legal fence as described in § 81-4-101, MCA, the violation of that statute is negligence per se.

Section 81-4-101, MCA, is the first section in that portion of the Montana Code broadly pertaining to the "Containment of Livestock."

**81-4-101. Legal fences defined. Any** one of the following, if not less than 44 inches or more than 48 inches in height, shall be a legal fence in the state of Montana:
(1) all fences constructed of at least three barbed, horizontal, well-stretched wires, the lowest of which must not be less than 15 inches or more than 18 inches from the ground, securely fastened as nearly equidistant as possible to substantial posts firmly set in the ground or to well-supported leaning posts not exceeding 20 feet apart or 33 feet apart where two or more stays or pickets are used equidistant between posts. All corral fences which are used exclusively for the purposes of enclosing stacks which are situated outside of any lawful enclosure shall not be less than 16 feet from such stack so enclosed and shall be substantially built with posts not more than 8 feet distant from each other and not less than five strands of well-stretched barbed wire and shall not be less than 5 or more than 6 feet high. Any kind of a fence equally as effectual for the purpose of a corral fence may be made in lieu thereof.

10

(2) all fences constructed of any standard woven wire not less than 28 inches in height, securely fastened to substantial posts not more than 30 feet apart, provided that two equidistant barbed wires shall be placed above the same at a height of not less than 48 inches from the ground;

(3) all other fences made of barbed wire, which shall be as strong and as well calculated to protect enclosures as those above described;

(4) all fences consisting of four boards, rails, or poles with standing or leaning posts not over 17 feet and 6 inches apart, provided that, if leaning posts are used, there shall be a pole or wire fastened securely on the inside of the leg or support of such leaning post;

(5) all rivers, hedges, mountain ridges andbluffs, or other barriers over or through which it is impossible for stock to pass.

Section 81-4-101, MCA.

In VanLuchene v. State (1990), 244 Mont. 397, 401, 797 P.2d 932, 935, we set forth the five criteria necessary in order to establish that a defendant was negligent as a matter of law. Those criteria are as follows:

1. The defendant violated the particular statute.

2. The statute was enacted to protect a specific class of persons.

3. Plaintiff is a member of that class.

4. Plaintiff's injury is of the sort the statute was enacted to prevent.

5. The statute was intended to regulate members of defendant's class.

It is apparent that the whole purpose for the legislature's requiring fences to be constructed in a certain manner is to insure, to the extent possible, that livestock not on open range are adequately confined and are not free to roam and to cause harm to persons and property or to breed with the livestock of others. There could be no other purpose for that sort of legislation.

11

In 1933, the legislature enacted § 81-4-102, MCA, allowing for the construction and maintenance of vehicle passes in legal fences in the explicit or, at least, implicit recognition that automobiles were using highways protected by or adjacent to legal fences. Indeed, it is reasonable to conclude that the legislature has not further amended § 81-4-102, MCA, because it recognizes the reality that one of the purposes of a legal fence is to keep livestock off the roadways of this state and that no amendments to the statute are required to afford that protection to the motoring public. There is nothing in the statute which would preclude its application in proving negligence per se in connection with a livestock/vehicle accident.

Section 81-4-101, MCA, was not enacted simply to prevent injury to livestock. Section 81-4-103, MCA, provides:

> **Civil liability.** Any person constructing or maintaining any fence of any kind not described in 81-4-101 is liable in a civil action for all damages caused by reason of injury to stock resulting from such defective fence.

There is nothing in the wording of that statute which **limits** the civil liability of the owner of a defective fence to injury to livestock. While the statute specifically provides for civil liability for one sort of injury--i.e. to livestock--it does not, in any way, preclude liability for other types of injuries to persons or property resulting from the livestock owner's failure to properly contain his or her animals by means of a legal fence. We hold that violation of § 81-4-101, MCA, can be the basis for a finding of negligence per se when that violation results in injury **to a motorist or** passenger traveling on the highways.

12

Finally, the record establishes that Indendi did present sufficient evidence of negligence per se under the VanLuchene test. Starting with the premise, as we have, that § 81-4-101, MCA, was enacted to require the containment of livestock by means of a "legal fence" and, thereby, to prevent, among other harm, livestock/vehicle accidents, Indendi presented evidence that the Workmans violated the statute by failing to construct a legal fence; that she was a motorist using the highway adjacent to lands owned by the Workmans, lands required to be legally fenced to prevent the escape of their livestock; and that she suffered personal injuries in a vehicle collision with the Workmans' livestock that escaped through their defective fence onto the highway. In doing so, Indendi sufficiently established the elements of negligence per se as set forth in VanLuchene. On retrial of this matter, we do not preclude a defense that the Workmans' fence was damaged or tampered with where the evidence supports such a finding.

We reverse and remand, and instruct the District Court to empanel a jury to hear the case.

_____
Justice

We concur.

_____
Chief Justice

13

_William E. Hunter_

_Irma/Treuitle_

_Burgess_

**Justices**

Justice Karla M. Gray specially concurring.

I concur in the Court's opinion regarding negligence and res ipsa loquitur. I specially concur in the result the Court reaches on whether a violation of § 81-4-101, MCA, is negligence per se, even though I do not agree with all that is said on that subject. My concurrence in the result is based on the fact that the Workmans' arguments in this regard are unpersuasive.

The Workmans advance only two arguments with regard to the applicability of § 81-4-101, MCA. First, they argue that application of negligence per se based on a violation of the "legal fence" statute is inconsistent with the prohibition in § 60-7-203, MCA, against presumptions or inferences of negligence on the part of a livestock owner in a civil action involving a vehicle-domestic animal accident on the highway. It is my view that no inconsistency exists. In an ordinary negligence action, the plaintiff must prove the existence of a legal duty and a breach of that duty; it is to those elements of an ordinary negligence action which the § 60-7-203, MCA, prohibition against inferences and presumptions of negligence relates.

Negligence per se is a separate theory of liability premised on the violation of a statute. In a negligence per se claim, the plaintiff need not establish the existence of a duty and a breach of that duty. Where a statute applies, the plaintiff need only establish that the defendant violated the statute and then prove that the damage or injury was caused by the statutory violation. Inferences or presumptions of negligence have no bearing on a

15

negligence per se claim. Thus, I would reject the Workmans' first argument regarding the applicability of § 81-4-101, MCA, in this case.

The Workmans' second argument is equally unpersuasive. They argue that the definition of a legal fence in Montana is ambiguous because of the existence of two statutes, §§ 81-4-101 and 81-4-203, MCA, on the subject. Section 81-4-101, MCA, as set forth in its entirety in the Court's opinion, sets forth the types of fences which "shall be a legal fence in the state of Montana[;]" those fences include, among others, fences constructed of "at least three barbed, horizontal, well-stretched wires" of certain heights. The Workmans point out that § 81-4-203, MCA, references fences "of not less than two wires in good repair." On this basis, they argue that the definition of a legal fence is ambiguous and, therefore, that their gate complies with at least part of the definition.

The flaw in this argument is that, by its terms, § 81-4-203, MCA, applies only vis-a-vis certain other statutes. The limiting language states: "In 81-4-204, 81-4-207, and 81-4-208," certain subsequent definitions apply; the "fence of not less than two wires in good repair" language follows the limiting introductory language of § 81-4-203, MCA. The statutes referred to in § 81-4-203, MCA, are not involved in the case before us. Thus, I would reject the Workmans' second argument regarding the applicability of § 81-4-101, MCA.

_____
                Justice

Justice Fred J. Weber concurs and dissents as follows:

I **concur** with the opinion's analysis under the Negligence issue and its holding that the District Court erred in directing a verdict for the Workmans.   In a similar manner,  on Res Ipsa Loauitur,  I agree with the affirmation of the District Court's conclusion that the case should not include the theory of res ipsa loquitur.

### Negligence Per Se

I dissent from the holding that a violation of § 81-4-101, MCA,  can be a basis for a finding of negligence per se in this case.   The opinion sets forth § 81-4-101, MCA, with its definition of a legal fence.  Note that as to a barbed wire fence, at least three barbed, horizontal, well-stretched wires are required, together with additional provisions.   I emphasize this because of other code sections later mentioned which do not limit a barbed wire fence to three wires.

The opinion then refers to § 81-4-103, MCA, and its statement that any person maintaining a fence which is not a legal fence is liable for damages such as "injury to stock."  The opinion then concludes there is nothing  in that reference which precludes liability from other types of injuries to persons or property resulting from a livestock owner's failure to contain animals by means of a legal fence.  The opinion then concludes that while § 103 provides for civil liability for one sort of injury, it does not preclude liability for other types of injuries.  This is followed by the holding which in substance states that § 81-4-101,

17

MCA, establishes a basis for negligence per se in this case. I suggest this analysis fails to adequately consider other Montana statutes.

Part 2 of Chapter 4 of Title 81 sets forth a number of provisions regarding animals unlawfully running at large. Section 81-4-203, MCA, provides as follows:

> **81-4-203.** Open range defined. In 81-4-204, 81-4-207, and 81-4-208, the term "open range" means all lands in the state of Montana <u>not enclosed by a fence of not less than two wires in good re</u>pair. . (Emphasis supplied.)

Note that a two-wire barbed wire fence which converts open range land is not adequate to constitute a "legal fence."

Section 81-4-204, MCA, makes it unlawful to allow certain described animals to run at large on the open range. In a similar manner, subsequent sections refer to such things as castration of animals running at large on the open range, killing of animals running at large on open range, unlawfully allowing bulls other than purebred bulls to run on open range. It therefore is clear that for the purposes of part 2, Chapter 4 of Title 81, a two wire fence in good repair is sufficient to change land from open range and to establish liability for different purposes--all without any reference to "legal fence" as defined in 81-4-101. The result is that property owners could maintain a two-wire fence in good repair and thereby protect themselves from claims under such part 2 of Chapter 4. Nonetheless, the same party could be held liable for the same claims on a different theory--that used in the present case--that the two-wire fence in good repair was still not a legal

18

fence and therefore the owner was guilty of negligence per se. This is a significant contradiction.

Later sections in this same part demonstrate that the legislature can refer to "legal fence" when it desired to do so. In § 81-4-215, MCA, the owner of various described animals is liable for damages resulting from these animals breaking into an enclosure where the fence is legal. In a similar manner, § 81-4-217, MCA, provides that if an animal breaks into an enclosure "surrounded by a legal fence" and is wrongfully on the premises, the owner may be held liable for damages. It is therefore apparent that the legislature has made a reference to legal fence when it finds it reasonable or necessary to do so.

Chapter 7 of Title 60 entitled Livestock on Highways, was enacted in 1974. As a part of its purposes it states:

> **60-7-101. Purpose**. It is the purpose of 60-7-101 through 60-7-103 to balance the tradition of the open range and the economic and geographic problems of raising livestock with the need for safer highways and the policy of taking all feasible measures to reduce the high incidence of traffic accidents and fatalities on Montana highways.

The following section also contains a somewhat different definition of "open range" as compared to § 81-4-203, MCA:

> 60-7-102. Definitions. As used in 60-2-208 and 60-7-101 through 60-7-103, the following definitions apply:
> . . .
> (4) "Open range" means those areas of the state where livestock is raised and maintained in sufficient numbers as to constitute a significant part of the local or county economy and where such animals graze and move about <u>generally unrestrained by fences.</u>  (Emphasis supplied.)

19

Note that the legislature failed to provide that generally unrestrained by fences meant unrestrained by "legal fences."

Section 60-7-103, MCA, places upon the Department of Transportation the responsibility to fence the right-of-way of the state highway system in various places where it is constructed through open range. While there are a number of statutory requirements that the Department shall erect fences, there is no references to "legal fence." I conclude that in its direct consideration of the issue of livestock and highway usage, the legislature made no reference to a need to comply with the "legal fence" definition. Under the opinion analysis in this case, if any of the fences constructed by the Department do not meet the "legal fence" definition of § 81-4-101, MCA, then the Department and State of Montana are subject to liability for any injury resulting from failure to construct legal fences throughout Montana.

While not a matter of record, it is common knowledge that electrified fences have been used throughout Montana for a number of years as a means of containing livestock. Electrified fences as commonly used do not meet the requirements of § 81-4-101, MCA. It will come as a shock to many livestock owners in the State of Montana to find that they are negligent per se in the use of electrified fences which fail to meet the legal fence definition of § 81-4-101, MCA, which requires three barbed, horizontal, well stretched wires, securely fastened as nearly equal distant as possible to substantial posts and with other additional provisions.

I therefore conclude that § 8X-4-101, MCA, defines various types of legal fences but does not exclude from the definition of legal fences all other types of fences not therein described. Under the facts of this case, it still would be possible that Indendi could prove negligence on the part of the Workmans in the construction of a single wire electrified fence, but that should remain as an issue of fact to be determined in the course of trial.

I would therefore hold that plaintiff Indendi has failed to prove negligence per se. As a result I dissent from this portion of the opinion.

_____
Justice

Chief Justice J.A. Turnage concurs in the foregoing dissent.

_____
Chief Justice

21